# EXHIBIT C

# AGREEMENT OF LIMITED PARTNERSHIP

## OF

## GSC OPPORTUNITIES, L.P.

**Table of Contents**

Page

**ARTICLE I - THE PARTNERSHIP** ........................................................................... 1

Section 1.1    Formation............................................................................ 1
Section 1.2    Name................................................................................... 1
Section 1.3    Purpose............................................................................... 1
Section 1.4    Principal Place of Business................................................ 1
Section 1.5    Term.................................................................................... 1
Section 1.6    Definitions........................................................................... 2

**ARTICLE II - PARTNERS; CAPITAL CONTRIBUTIONS; LOANS**................................ 6

Section 2.1    Capital Contributions.......................................................... 6
Section 2.2    Admission of Additional Limited Partners........................... 6
Section 2.3    Schedule of Partners........................................................... 7
Section 2.4    Redemption.......................................................................... 7
Section 2.5    Other Matters....................................................................... 8

**ARTICLE III – DISTRIBUTIONS AND ALLOCATIONS**.............................................. 8

Section 3.1    Distributions......................................................................... 8
Section 3.2    Tax Withholding................................................................... 8
Section 3.3    Allocations........................................................................... 8
Section 3.4    Special Allocations.............................................................. 9
Section 3.5    Curative Allocations............................................................ 9

**ARTICLE IV - MANAGEMENT** ........................................................................... 10

Section 4.1    Authority of the General Partner......................................... 10
Section 4.2    Right to Rely on General Partner......................................... 11
Section 4.3    Duties and Obligations of General Partner........................... 11
Section 4.4    Indemnification of General Partner...................................... 12
Section 4.5    Compensation; Expenses of General Partner....................... 12
Section 4.6    Operating Restrictions......................................................... 13
Section 4.7    Removal and Appointment of General Partner...................... 13

**ARTICLE V - ROLE OF LIMITED PARTNERS**......................................................... 13

Section 5.1    Rights or Powers.................................................................. 13
Section 5.2    Voting Rights........................................................................ 13
Section 5.3    Procedure for Consent......................................................... 13

**ARTICLE VI - BOOKS AND RECORDS** ................................................................. 14

Section 6.1    Books and Records.............................................................. 14
Section 6.2    Tax Information.................................................................... 14

**ARTICLE VII - AMENDMENTS; ACTIONS OF THE PARTNERS** ............................... 14

Section 7.1    Amendments........................................................................ 14
Section 7.2    Actions of the Partners........................................................ 15

**ARTICLE VIII – TRANSFERS OF INTERESTS** .................................................................. 15

    Section 8.1    Restriction on Transfers. ................................................................ 15
    Section 8.2    Permitted Transfers. ...................................................................... 15
    Section 8.3    Prohibited Transfers. ..................................................................... 16
    Section 8.4    Rights of Unadmitted Assignees. .................................................. 16
    Section 8.5    Admission of Assignees as Partners. ............................................ 16
    Section 8.6    Covenants and Representations Regarding Transfers. .................... 17
    Section 8.7    Distributions and Allocations with Respect to Transferred Interests. ............. 17

**ARTICLE IX - GENERAL PARTNER** ................................................................................ 18

    Section 9.1    Covenant Not to Withdraw, Transfer or Dissolve. ......................... 18
    Section 9.2    Permitted Transfers. ...................................................................... 18
    Section 9.3    Prohibited Transfers. ..................................................................... 18

**ARTICLE X - POWER OF ATTORNEY** ........................................................................... 19

    Section 10.1    General Partner as AttorneyInFact. ............................................ 19
    Section 10.2    Nature as Special Power. .............................................................. 19

**ARTICLE XI - DISSOLUTION AND WINDING UP** ......................................................... 19

    Section 11.1    Liquidating Events. ...................................................................... 19
    Section 11.2    Winding Up. ................................................................................. 20
    Section 11.3    Notice of Dissolution. .................................................................. 20

**ARTICLE XII - MISCELLANEOUS** ................................................................................. 20

    Section 12.1    Anti-Money Laundering Provisions. ............................................ 20
    Section 12.2    Notices. ........................................................................................ 21
    Section 12.3    Binding Effect. ............................................................................. 21
    Section 12.4    Construction. ................................................................................ 21
    Section 12.5    Headings. ..................................................................................... 22
    Section 12.6    Severability. ................................................................................. 22
    Section 12.7    Incorporation by Reference. .......................................................... 22
    Section 12.8    Further Action. ............................................................................. 22
    Section 12.9    Governing Law. ........................................................................... 22
    Section 12.10    Waiver of Action for Partition; No Bill for Partnership Accounting. ........... 22
    Section 12.11    Counterpart Execution. ............................................................... 22
    Section 12.12    Sole and Absolute Discretion. ..................................................... 22
    Section 12.13    Specific Performance. ................................................................. 22
**Signature pages** ........................................................................................................... 23
**Schedule of Partners** .................................................................................................. 24
**Counterpart Signature Pages** ..................................................................................... 25

## AGREEMENT OF LIMITED PARTNERSHIP
## OF
## GSC OPPORTUNITIES, L.P.

This Agreement of Limited Partnership (this "Agreement") of GSC OPPORTUNITIES, L.P., an Ohio limited partnership (the "Partnership"), is made and entered into as of the [___] day of _____ 2013 by and among GSC Opp Management, LLC, an Ohio limited liability company, as the general partner (the "General Partner"), GSC Opp Management, LLC, an Ohio limited liability company, as the Initial Limited Partner, and the Persons executing separate counterpart signature pages to this Agreement as Limited Partners (collectively, the "Limited Partners" and together with the General Partner, the "Partners").

### RECITALS:

WHEREAS, the Partnership is raising funds in order to finance the expansion and operations of restaurant assets in Cincinnati, Ohio, USA (the "Project").

WHEREAS, the Partners desire to enter into this Agreement in order to set forth fully their respective rights, powers, duties and obligations with respect to the Partnership and each other as Partners

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to by bound hereby, agree as follows:

### I.- THE PARTNERSHIP

1.1 Formation. The Partnership was formed as an Ohio limited partnership by the filing, on[February __, 2013], of a Certificate of Limited Partnership (the "Certificate") with the Ohio Secretary of State pursuant to the Ohio Revised Uniform Partnership Act, as amended from time to time (the "Act").

1.2 Name. The name of the Partnership shall be GSC OPPORTUNITIES, L.P., and all business of the Partnership shall be conducted in such name. The General Partner may change the name of the Partnership upon ten (10) Business Days' notice to the Limited Partners.

1.3 Purpose. The purpose and business of the Partnership shall be to invest in and/or loan money to various entities in Targeted Employment Areas that are operating a business for the purposes of stimulating economic development and job creation through organizing and owning wholly owed subsidiaries to: (i) open and operate Gold Star Chili restaurant franchises in the Dayton-Cincinnati-Lexington region of Southwest Ohio and Kentucky, and (ii) own and lease real estate to such franchises, determined by the General Partner on a case-by-case basis in its discretion, as set forth and described in the Business Plan attached as an Exhibit to this Agreement..

1.4 Principal Place of Business. The principal place of business of the Partnership shall be located at 650 Lunken Park Drive, Cincinnati, Ohio 45226. The Partnership may have such other place or additional places of business as the General Partner may determine from time to time and as indicated by written notice to the limited partners.

1.5 Term. The term of the Partnership commenced on the date the Certificate was filed in the office of the Ohio Secretary of State in accordance with the Act and shall continue until the winding up and liquidation of the Partnership and its business is completed following a Liquidating Event, as provided in ARTICLE XI hereof.

1.6 Definitions. Capitalized words and phrases used in this Agreement have the following meanings:

"Act" has the meaning set forth in Section 1.1 hereof.

"Adjusted Capital Account" means, with respect to any Partner, such Partner's Capital Account, after giving effect to the following adjustments:

      i.    Increase such Capital Account by any amounts that such Partner is obligated to restore (pursuant to any provision of this Agreement or otherwise) or is deemed to be obligated to restore pursuant to the penultimate sentences of Regulations Sections 1.7042(g)(1) and 1.7042(i)(5); and

      ii.    Decrease such Capital Account by the items described in Regulations Sections 1.7041(b)(2)(ii)(d)(4), 1.7041(b)(2)(ii)(d)(5) and 1.7041(b)(2)(ii)(d)(6).

The foregoing definition of Adjusted Capital Account is intended to comply with the provisions of Regulations Section 1.7041(b)(2)(ii)(d) and shall be interpreted consistently therewith.

"Adjusted Capital Account Deficit" means, with respect to any Partner, the deficit balance, if any, in such Partner's Adjusted Capital Account as of the end of the relevant Allocation Year.

"Affiliate" means, with respect to any Person, (i) any Person directly or indirectly controlling, controlled by or under common control with such Person, (ii) any Person owning or controlling ten percent (10%) or more of the outstanding voting interests of such Person, (iii) any officer, director or general partner of such Person, or (iv) any Person who is an officer, director, general partner, trustee or holder of ten percent (10%) or more of the voting interests of any Person described in clauses (i) through (iii) of this sentence. For purposes of this definition, the term "controls," "is controlled by," or "is under common control with" shall mean the possession, whether direct or indirect, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities, by contract or otherwise.

"Agreement" or "Partnership Agreement" means this Agreement of Limited Partnership, as amended from time to time. Words such as "herein," "hereinafter," "hereof," "hereto" and "hereunder" refer to this Agreement as a whole, unless the context otherwise requires.

"Allocation Year" means (i) the period commencing on the Effective Date and ending on December 31, 2013, (ii) any subsequent period commencing on January 1 and ending on the following December 31, or (iii) any portion of the period described in clause (ii) for which the Partnership is required to allocate Profits, Losses and other items of Partnership income, gain, loss or deduction pursuant to ARTICLE III hereof.

2

"Business Day" means a day of the year on which banks are not required or authorized to close in New York, New York.

"Capital Account" means, with respect to any Partner, the Capital Account maintained for such Partner in accordance with the following provisions:

  i.     Each Partner's Capital Account shall be increased by such Partner's Capital Contributions, such Partner's distributive share of Profits and any items in the nature of income or gain that are specially allocated pursuant to Section 3.4 or Section 3.5 hereof, and the amount of any Partnership liabilities assumed by such Partner or that are secured by any Partnership property distributed to such Partner.

  ii.    Each Partner's Capital Account shall be decreased by the amount of cash distributed to such Partner pursuant to any provision of this Agreement, such Partner's distributive share of Losses and any items in the nature of expenses or losses that are specially allocated pursuant to Section 3.4 or Section 3.5 hereof, and the amount of any liabilities of such Partner assumed by the Partnership or that are secured by any property contributed by such Partner to the Partnership

  iii.   If all or a portion of an interest in the Partnership is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred interest.

  iv.    In determining the amount of any liability for purposes of subparagraphs (i) and (ii), there shall be taken into account Code Section 752(c) and any other applicable provisions of the Code and Regulations.

The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Regulations Section 1.7041(b) and shall be interpreted and applied in a manner consistent with such Regulations. If the General Partner shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto (including, without limitation, debits or credits relating to liabilities that are secured by contributed or distributed property or that are assumed by the Partnership or the Partners), are computed in order to comply with such Regulations, the General Partner may make such modification, provided that it is not likely to have a material effect on the amounts distributable to any Partner pursuant to ARTICLE XI hereof upon the dissolution of the Partnership. The General Partner shall also (i) make any adjustments that are necessary or appropriate to maintain equality between the aggregate Capital Accounts of the Partners and the amount of Partnership capital reflected on the Partnership's balance sheet, as computed for book purposes in accordance with Regulations Section 1.7041(b)(2)(iv)(q) and (ii) make any appropriate modifications If unanticipated events might otherwise cause this Agreement not to comply with Regulations Section 1.7041(b).

"Capital Contributions" means, with respect to any Partner, the amount of money and fair market value of other property contributed to the Partnership by such Partner (or its predecessors in interest).

3

"Certificate" has the meaning set forth in Section 1.1 hereof.

"Code" means the Internal Revenue Code of 1986, as amended from time to time (or any corresponding provisions of succeeding law).

"Depreciation" means, for each Allocation Year, an amount equal to the depreciation, amortization or other cost recovery deduction allowable with respect to an asset for such Allocation Year.

"Effective Date" means the date first written above.

"Fiscal Year" means (i) the period commencing on the Effective Date and ending on December 31, 2013 and (ii) any subsequent period commencing on January 1 and ending on the earlier to occur of (A) the following December 31, or (B) the date on which all Partnership Property is distributed pursuant to Section 11.2 hereof and the Certificate has been canceled pursuant to the Act.

"General Partner" means GSC Opp Management, LLC, an Ohio limited liability company, and any other Person admitted to the Partnership as a general partner pursuant to the terms of this Agreement, and their respective successors and assigns.

"Interest" means, with respect to any Partner, the interest of such Partner in the Partnership pursuant to the terms of this Agreement and the mandatory provisions of any applicable law, including, without limitation, such Partner's right, if any, to participate in the management of the Partnership's business and affairs and such Partner's right to allocations of Profits and Losses and to distributions, liquidating or otherwise, as provided herein.

"Limited Partner" means each Person executing a separate counterpart signature page to this Agreement as a Limited Partner, and any other Person admitted to the Partnership as a Limited Partner pursuant to the terms of this Agreement, and their respective successors and assigns.

"Initial Limited Partner" means GSC Opp Management, LLC, an Ohio limited liability company. The Initial Limited Partner will resign upon the admission of a Limited Partner to the Partnership.

"Limited Partner's Preferred Return" shall mean a cumulative 2% annual return on a Limited Partner's Capital Contribution.

"Liquidating Event" has the meaning set forth in Section 11.1 hereof.

"Management Fee" has the meaning set forth in Section 4.5 hereof.

4

"Majority in Interest" means, with respect to any matter requiring the vote or consent of the Limited Partners, those Limited Partners holding more than fifty percent (50%) of the Percentage Interests.

"Partners" means the General Partner and the Limited Partners , where no distinction is required by the context in which the term is used herein. "Partner" means any one of the Partners.

"Partnership" means the partnership formed pursuant to this Agreement and the partnership continuing the business of this partnership pursuant to Section 12.1 hereof in the event of dissolution as herein provided.

"Percentage Interest" means, with respect to any Partner, as of any date, the interest of a Partner in the Partnership, as set forth on the Schedule of Partners attached hereto.

"Permitted Transfer" has the meaning set forth in Section 8.2 hereof.

"Person" means any individual, partnership (whether general or limited and whether domestic or foreign), limited liability company, corporation, trust, estate, association, custodian, nominee or other entity.

"Profits" and "Losses" means, for each Allocation Year, an amount equal to the Partnership's taxable income or loss for such Allocation Year, determined in accordance with Code Section 703(a) (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments:

    i.    Any income of the Partnership that is exempt from federal income tax and not otherwise taken into account in computing Profits and Losses pursuant to this definition of "Profits" and "Losses" shall be added to such taxable income or loss;

    ii.    Any expenditures of the Partnership described in Code Section 705(a)(2)(B) or treated as Code Section 705(a)(2)(B) expenditures pursuant to Regulations Section 1.704l(b)(2)(iv)(i) and not otherwise taken into account in computing Profits or Losses pursuant to this definition of "Profits" and "Losses" shall be subtracted from such taxable income or loss;

    iii.    In lieu of the depreciation, amortization and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such Allocation Year or other period, computed in accordance with the definition of "Depreciation;"

    iv.    To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Code Section 734(b) is required pursuant to Regulations Section 1.704l(b)(2)(iv)(m)(4) to be taken into account in determining Capital Accounts as a result of a distribution other than in liquidation of a Partner's interest in the Partnership, the amount of such adjustment shall be treated as an item of gain (if the adjustment increases the basis of the asset) or

5

loss (if the adjustment decreases the basis of the asset) from the disposition of the asset and shall be taken into account for purposes of computing Profits or Losses; and

> v. Notwithstanding any other provision of this definition of "Profits" and "Losses," any items that are specially allocated pursuant to Section 3.4 or Section 3.5 hereof shall not be taken into account in computing Profits or Losses.

The amounts of the items of Partnership income, gain, loss or deduction available to be specially allocated pursuant to Section 3.4 and Section 3.5 hereof shall be determined by applying rules analogous to those set forth in subparagraphs (i) through (v) above.

"Project" has the meaning set forth in the Recitals hereof.

" Regulations " means the Income Tax Regulations, including Temporary Regulations, promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

"Regulatory Allocations" has the meaning set forth in Section 3.5 hereof.

"Schedule of Partners" means that certain schedule attached to this Agreement, as amended from time to time in accordance with this Agreement, setting forth the names and addresses of the Partners, the Capital Contributions made by each Partner and each Partner's Percentage Interest.

"Targeted Employment Area" means an area that has been designated by Steven R. Kelly or otherwise designated person(s) or entities by the Office of the Governor of the State of Ohio or Commonwealth of Kentucky that has experienced unemployment of at least 150% of the national average rate at the time a Limited Partner made his or her Capital Contribution.

"Tax Matters Partner" shall have the meaning set forth in Section 4.1(k) hereof.

"Termination of Limited Partner's Interest" has the meaning set forth in Section 2.4 hereof.

"Transfer" means, as a noun, any voluntary or involuntary transfer, sale or other disposition and, as a verb, voluntarily or involuntarily to transfer, sell or otherwise dispose of.

"Trigger Date" has the meaning set forth in Section 2.4 hereof.

"Wholly Owned Affiliate" of any Person means an Affiliate of such Person (i) one hundred percent (100%) of the voting stock or beneficial ownership of which is owned directly by such Person, or by any Person who, directly or indirectly, owns one hundred percent (100%) of the voting stock or beneficial ownership of such Person, (ii) an Affiliate of such Person who, directly or indirectly, owns one hundred percent (100%) of the voting stock or beneficial ownership of such Person, and (iii) any Wholly Owned Affiliate of any Affiliate described in clause (i) or clause (ii).

6

## II.- PARTNERS; CAPITAL CONTRIBUTIONS; TERMINATION OF LIMITED PARTNER'S INTEREST

2.1 Capital Contributions. Upon execution of this Agreement, the General Partner and each Limited Partner shall make a cash Capital Contribution to the Partnership in the amount set forth opposite the name of such Partner on the attached Schedule of Partners. Except as otherwise required under applicable law, in no event shall any Limited Partner be required to make a Capital Contribution in excess of such Limited Partner's Capital Contribution as shown on the attached Schedule of Partners.

2.2 Admission of Additional Limited Partners. After the date of this Agreement the General Partner may issue additional Interests in the Partnership to one or more Persons and admit each such Person(s) to the Partnership as a Limited Partner; *provided, however,* that the General Partner shall not issue such Interests unless (i) the Partnership has received an instrument of joinder, in form acceptable to the General Partner, executed by that Person pursuant to which such Person has agreed to be bound by the terms of this Agreement; (ii) that Person has made the Capital Contribution, if any, required by the General Partner; and (iii) that Person has provided such other information or agreements, if any, as the General Partner may require. Upon the admission of a Limited Partner to the Partnership, the Initial Limited Partner shall resign.

Except as otherwise provided in this Section 2.2 or ARTICLE VIII hereof (relating to Transfers of Interests), additional Limited Partners may only be admitted to the Partnership with the approval of the General Partner, with such approval not to be unreasonably withheld, and the approval of a Limited Partner's I-526 petition. If a Limited Partner's I-526 petition is denied, the General Partner shall return his Capital Contribution within 90 days of the receipt of such denial.

2.3 Schedule of Partners. Upon the admission of a Person as a Partner, such Person shall be indicated on the Schedule of Partners as a General Partner or a Limited Partner, as the case may be, together with such Partner's address, Capital Contributions, and Percentage Interest. The Schedule of Partners shall be amended from time to time to reflect the admission of additional Partners, additional Capital Contributions by new or existing Partners, the Transfer of Interests, the withdrawal of a Partner, the Redemption of a Partner, the Termination of a Limited Partner's Interest, and other pertinent information contained in the Schedule of Partners.

Each Person indicated on the Schedule of Partners as a holder of record of an Interest shall continue to be the holder of record of such Interest until the deemed withdrawal of such Person as a Limited Partner or the notification and acceptance of the Transfer of any such Interest, or portion thereof, is given in accordance with the terms of this Agreement. A holder of record shall be entitled to all distributions and all allocations of Profits and Losses with respect to the Interest registered in his name and to all other rights of a Partner until his rights in such Interest, or portion thereof, have terminated upon his deemed withdrawal or have been Transferred and the General Partner notified as required herein. The Partnership shall not be affected by any notice or knowledge of Transfer of an Interest, except as expressly provided in ARTICLE VIII or ARTICLE IX hereof, as applicable. The payment to the holder of record of any distribution with respect to an Interest shall discharge the Partnership's obligations in respect thereto.

2.4 Termination of a Limited Partner's Interest. After approval of a Limited Partner's I-829 Petition, and if the Partnership has paid a Limited Partner an amount equal to his Preferred Return and his Capital Contribution, the General Partner may, at its option, terminate the interest of the limited partner as

7

a Limited Partner in the Partnership. Upon termination, the Limited Partner will cease being a Limited Partner and will have no further interest in the Partnership. There is no guarantee that the Partnership will ever be able to pay a limited partner his preferred return or make any distributions to the Limited Partner.

     2.5   <u>Other Matters</u>. Except in accordance with <u>Sections 2.4</u> hereof or as otherwise provided in this Agreement, no Limited Partner shall demand or receive a return of his Capital Contributions or withdraw from the Partnership without the consent of the General Partner. Under circumstances requiring a return of any Capital Contributions, no Limited Partner shall have the right to receive property other than cash, except as may be specifically provided herein.

              No General Partner shall have any personal liability for the repayment of any Capital Contributions of any Partner.

### III. – DISTRIBUTIONS AND ALLOCATIONS

     <u>3.1 Distributions</u>. The Partnership may, but is not required to, make distributions to the Partners as and when the Partnership receives distributions of funds from the Project, as well as from any company investment (if any), and from time to time upon the approval of the General Partner. Notwithstanding the Percentage Interest set forth on the Schedule of Partners, all distributions shall be made:

        (a)    80% to the Limited Partners in proportion to the Partnership Interest as set forth on the Schedule of Partners ("LP Distribution") and 20% to the General Partner until the Limited Partners receive total distributions equal to the Limited Partners' Preferred Return plus the Limited Partners' Capital Contribution; and

        (b)    The Partnership shall deposit into a separate cash checking account controlled by the General Partner an annual payment equal to the summation of: (a) the LP Distribution; and (b) 100% of distributable proceeds, if any, from the liquidation of real assets of the Partnership or subsidiaries (the "Preferred Payment"). Monies from this separate cash checking account is intended for the purchase Limited Partners' Interests. Upon the later of the approval date of each Member's I-829 petition or the three (3) year anniversary of each Member's I-526 approval, the Partnership intends to use all accumulated Preferred Payment to purchase each Limited Partner's Interest. However there is no guarantee that the Partnership will actually use the Preferred Payment in this manner or that there will be any Preferred Payment available to do so.

        (c)    Should any Limited Partner eventually receive total distributions equal to the Limited Partner's Preferred Return plus the Limited Partner's Capital Contribution, then the Limited Partner's interest in the Partnership shall be considered terminated. The Limited Partner shall have no further claims to the Partnership.

     Each Partner's Percentage Interest shall be adjusted to take into account Termination of a Limited Partner's Interest as set forth in Section 2.4 hereof.

     <u>3.2 Tax Withholding</u>. All amounts withheld or required to be withheld pursuant to the Code or any provision of any state, local or foreign tax law with respect to any payment, distribution or allocation to the Partners, and treated by the Code (whether or not withheld pursuant to the Code) or any such tax

law as amounts payable by or in respect of any Partner or any Person owning an interest, directly or indirectly, in such Partner, shall be treated as amounts distributed to the Partner with respect to which such amount was withheld pursuant to this ARTICLE III for all purposes under this Agreement. The General Partner is authorized to withhold from distributions, or with respect to allocations, to the Partners and to pay over to any federal, state, local or foreign government any amounts required to be so withheld pursuant to the Code or any provisions of any other federal, state, local or foreign law and shall allocate any such amounts to the Partners with respect to which such amounts were withheld.

3.3 Allocations. Except as otherwise provided pursuant to Section 3.4 hereof, the Partnership's Profits and Losses shall be allocated in accordance with this Section 3.3. In the event the Partners' Percentage Interests change during any year, such allocations shall be made in accordance with Section 706(d) of the Code by taking into account the Partners' varying interests.

    (a)    Profits. After giving effect to the Regulatory Allocations, until such time that the Limited Partners have received total distributions equal to the Limited Partners' Preferred Return plus the Limited Partners Capital Contributions, 80% of the profits for any Allocation Year may be allocated to the Limited Partners in proportion to their percentage interest as set forth on the Schedule of Partners and 20% to the General Partner. Should any Limited Partner eventually receive total distributions equal to the Limited Partner's Preferred Return plus the Limited Partner's Capital Contribution, then the Limited Partner's interest in the Partnership shall be considered terminated, and 100% of profits for any Allocation Year will be allocated to the General Partner. The Percentage Interest of each Partner shall be adjusted to take into account the Termination of a Limited Partner's Interest as set forth in Section 2.4 hereof.

    (b)    Losses. After giving effect to the Regulatory Allocations, Losses for any Allocation Year shall be allocated to the Partners, as set forth in Section 3.3(a) above.

    (c)    For purposes of determining the Profits, Losses, or any other items allocable to any period, Profits, Losses and any such other items shall be determined on a daily, monthly or other basis, as determined by the General Partner using any permissible method under Code Section 706 and the Regulations thereunder.

    The Partners are aware of the income tax consequences of the allocations made by this ARTICLE III and hereby agree to be bound by the provisions of this ARTICLE III in reporting their shares of Partnership income and loss for income tax purposes.

3.4 Special Allocations. The following special allocations shall be made in the following order:

    a.    Qualified Income Offset. If any Partner who is not a General Partner unexpectedly receives any adjustments, allocations or distributions described in Regulations Sections 1.7041(b)(2)(ii)(d)(4), 1.7041(b)(2)(ii)(d)(5) or 1.7041(b)(2)(ii)(d)(6), items of Partnership income and gain shall be specially allocated to each such Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the Adjusted Capital Account Deficit of such Partner as quickly as possible, provided that an allocation pursuant to this Section 3.4(a) shall be made if and only to the extent that such Partner would have an Adjusted Capital Account Deficit after all other allocations provided for in this Article IV have been tentatively made as if this Section 3.4(a) were not in the Agreement.

9

    b.     <u>Gross Income Allocation</u>. If any Partner who is not a General Partner has an Adjusted Capital Account Deficit at the end of any Allocation Year, each shall be specially allocated items of Partnership income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this <u>Section 3.4(b)</u> hereof shall be made if and only to the extent that such Partner would have a deficit Capital Account in excess of such sum after all other allocations provided for in this <u>ARTICLE III</u> have been tentatively made as if <u>Section 3.4(a)</u> hereof and this <u>Section 3.4(b)</u> were not in the Agreement.

    c.     <u>Section 754 Adjustment</u>. To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Code Section 734(b) or Section 743(b) is required, pursuant to Regulations Section 1.7041(b)(2)(iv)(m)(2) or Section 1.7041(b)(2)(iv)(m)(4), to be taken into account in determining Capital Accounts as the result of a distribution to a Partner in complete liquidation of his Interest, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to Partners in accordance with their Interests in the event that Regulations Section 1.7041(b)(2)(iv)(m)(2) applies, or to the Partners to whom such distribution was made in the event that Regulations Section 1.7041(b)(2)(iv)(m)(4) applies.

    3.5 <u>Curative Allocations</u>. The allocations set forth in <u>Section 3.4(a)</u>, <u>Section 3.4(b)</u> and <u>Section 3.4(c)</u> hereof (the **"Regulatory Allocations"**) are intended to comply with certain requirements of the Regulations. It is the intent of the Partners that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of Partnership income, gain, loss or deduction pursuant to this <u>Section 3.5</u>. Therefore, notwithstanding any other provision of this <u>ARTICLE III</u> (other than the Regulatory Allocations), the General Partner shall make such offsetting special allocations of Partnership income, gain, loss or deduction in whatever manner it determines appropriate so that, after such offsetting allocations are made, each Partner's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Partner would have had if the Regulatory Allocations were not part of the Agreement and all Partnership items were allocated pursuant to <u>Section 3.3</u> hereof.

## IV. - MANAGEMENT

    4.1 <u>Authority of the General Partner</u>. Subject to the limitations and restrictions set forth in this Agreement (including, without limitation, those set forth in this <u>ARTICLE IV</u>), the General Partner shall have the sole and exclusive right and responsibility to manage the business of the Partnership and shall have all of the rights and powers that may be possessed by general partners under the Act including, without limitation, the right and power to:

    a.     Acquire by purchase, lease or otherwise any real or personal property that may be necessary, convenient or incidental to the accomplishment of the purposes of the Partnership; provided that the aggregate value of all real estate appraisals from third party certified commercial real estate appraisers and cost of improvements to real property is greater than $6,000,000.00.

    b.     Operate, maintain, finance, improve, construct, own, grant options with respect to, sell, convey, assign, mortgage and lease any real estate and any personal property necessary, convenient or incidental to the accomplishment of the purposes of the Partnership;

c. Hire any Person, including the General Partner or an affiliate of the General Partner, to provide management, maintenance and operational services to the Property, and to execute any and all agreements, contracts, documents, certifications and instruments necessary or convenient in connection with such management, maintenance and operation of the Property;

d. Execute any and all agreements, contracts, documents, certifications and instruments necessary or convenient in connection with managing the affairs of the Partnership, including executing amendments to the Agreement and the Certificate, in accordance with the terms of the Agreement, both as General Partner and, if required, as attorney-in-fact for the Limited Partners or Economic Partners pursuant to any power of attorney granted by the Limited Partners to the General Partner;

e. Execute, in furtherance of any or all of the purposes of the Partnership, any deed, lease, mortgage, deed of trust, mortgage note, promissory note, bill of sale, contract or other instrument purporting to convey or encumber any or all of the Partnership's property;

f. Prepay in whole or in part, refinance, recast, increase, modify or extend any liabilities affecting the Partnership's property and, in connection therewith, execute any extensions or renewals of encumbrances on any or all of the Partnership's property;

g. Care for and distribute funds to the Partners by way of cash, income, return of capital or otherwise, all in accordance with the provisions of this Agreement, and perform all matters in furtherance of the objectives of the Partnership or this Agreement;

h. Contract on behalf of the Partnership for the employment and services of employees and/or independent contractors, such as lawyers and accountants and delegate to such Persons the duty to manage or supervise any of the assets or operations of the Partnership;

i. Engage in any kind of activity and perform and carry out contracts of any kind (including contracts of insurance covering risks to Partnership's property and General Partner liability) necessary or incidental to, or in connection with, the accomplishment of the purposes of the Partnership, as may be lawfully carried on or performed by a partnership under the laws of each state in which the Partnership is then formed or qualified;

j. Make any and all elections for federal, state and local tax purposes including, without limitation, any election, if permitted by applicable law: (i) to make the election provided for in Code Section 6231(a)(1)(B)(ii); (ii) to adjust the basis of Partnership property pursuant to Code Sections 754, 734(b) and 743(b), or comparable provisions of state or local law, in connection with transfers of Interests and Partnership distributions; (iii) to extend the statute of limitations for assessment of tax deficiencies against the Partners with respect to adjustments to the Partnership's federal, state or local tax returns; and (iv) to the extent provided in Code Sections 6221 through 6231, to represent the Partnership and the Partners before taxing authorities or courts of competent jurisdiction in tax matters affecting the Partnership and the Partners, in their capacity as Partners, and to file any tax returns and execute any agreements or other documents relating to or affecting such tax matters, including agreements or other documents that bind the Partners with respect to such tax matters or otherwise affect the rights of

11

the Partnership and the Partners. The General Partner is specifically authorized to act as the "Tax Matters Partner" under the Code and in any similar capacity under state or local law;

k. Take, or refrain from taking, all actions, not expressly proscribed or limited by this Agreement, as may be necessary or appropriate to accomplish the purposes of the Partnership; and

l. Institute, prosecute, defend, settle, compromise and dismiss lawsuits or other judicial or administrative proceedings brought on or in behalf of, or against, the Partnership or the Partners in connection with activities arising out of, connected with or incidental to this Agreement, and to engage counsel or others in connection therewith.

4.2 Right to Rely on General Partner.

a. The signature of the General Partner shall be both necessary and sufficient to convey title to any real property owned by the Partnership or to execute any promissory notes, trust deeds, mortgages or other instruments of hypothecation, and all of the Partners agree that a copy of this Agreement may be shown to the appropriate parties in order to confirm the same, and further agree that the signature of the General Partner shall be sufficient to execute any "statement of partnership" or other documents necessary to effectuate this or any other provision of this Agreement. All of the Partners do hereby appoint the General Partner as their attorney-in-fact for the execution of any or all of the documents described in this Section 4.2.

4.3 Duties and Obligations of General Partner.

The General Partner shall cause the Partnership to conduct its business and operations separate and apart from that of the General Partner and its Affiliates, including, without limitation, (i) segregating Partnership assets and not allowing funds or other assets of the Partnership to be commingled with the funds or other assets of, held by, or registered in the name of the General Partner or any of its Affiliates, (ii) maintaining books and financial records of the Partnership separate from the books and financial records of the General Partner and its Affiliates, and observing all Partnership procedures and formalities, including, without limitation, maintaining minutes of Partnership meetings and acting on behalf of the Partnership only pursuant to due authorization of the Partners (excluding the Economic Partners), (iii) causing the Partnership to pay its liabilities from assets of the Partnership, (iv) causing the Partnership to conduct its dealings with third parties in its own name and as a separate and independent entity and (v) providing any documentation reasonably necessary to support the immigration petitions of a Limited Partner, including documentation showing the receipt and use of EB-5 capital and employment documentation..

The General Partner shall take all actions that may be necessary or appropriate (i) for the continuation of the Partnership's valid existence as a limited partnership under the laws of the State of Ohio and of each other jurisdiction in which such existence is necessary to protect the limited liability of the Limited Partners or to enable the Partnership to conduct the business in which it is engaged and (ii) for the accomplishment of the Partnership's purposes, including the acquisition, development, maintenance, preservation and operation of Partnership's property in accordance with the provisions of this Agreement and applicable laws and regulations.

12

4.4 Indemnification of General Partner.

(a) Except as otherwise provided in Section 4.4(c) and Section 4.4(d) hereof, the Partnership, its receiver or its trustee (in the case of its receiver or trustee, to the extent of the Partnership's property) shall indemnify, save harmless and pay all judgments and claims against the General Partner, or any member, manager or employee of the General Partner, relating to any liability or damage incurred by reason of any act performed or omitted to be performed by the General Partner, or such member, manager or employee, in connection with the business of the Partnership, including attorneys' fees incurred by the General Partner, or such member, manager or employee, in connection with the defense of any action based on any such act or omission, which attorneys' fees may be paid as incurred, including all such liabilities under federal and state securities laws (including the Securities Act of 1933, as amended) as permitted by law. Except as otherwise provided in Section 4.4(c) and Section 4.4(d) hereof, upon such conditions as it deems appropriate, the Partnership may pay the expenses incurred by the General Partner in defending any civil, criminal, administrative or investigative claim, demand, action, suit or proceeding in advance of the final disposition of the same, but only upon the prior receipt of a written undertaking by or on behalf of the General Partner to repay all of such advances if it is ultimately determined that it was not entitled to such indemnification

(b) Except as otherwise provided in Section 4.4(c) and Section 4.4(d) hereof, in the event of any action by a Partner against the General Partner (or a member, manager or employee of the General Partner), including a Partnership derivative suit, the Partnership shall indemnify, save harmless and pay all expenses of the General Partner (or such member, manager or employee), including attorneys' fees, incurred in the defense of such action, if such General Partner (or such member, manager or employee) is successful in such action.

(c) Notwithstanding the provisions of Section 4.4(a) and Section 4.4(b) hereof, neither the General Partner nor any member, manager or employee of the General Partner shall be indemnified from any liability for fraud, bad faith, willful misconduct or gross negligence.

(d) Notwithstanding anything to the contrary in any of Section 4.4(a) and Section 4.4(b) hereof, in the event that any provision in any of such Sections is determined to be invalid in whole or in part, such Section shall be enforced to the maximum extent permitted by law.

4.5 Compensation; Expenses of General Partner.

Compensation and Reimbursement. Except as otherwise provided in this Agreement, no Partner shall receive any salary, fee or draw for services rendered to or on behalf of the Partnership, nor shall any Partner be reimbursed for any expenses incurred by such Partner on behalf of the Partnership.

General Partner Management Fee. The General Partner shall receive a management fee equal to 5% of gross revenues of the Fund, payable monthly.

Expenses. The General Partner may charge the Partnership for any direct expenses reasonably incurred by it in connection with the Partnership business.

13

4.6 Operating Restrictions.

No loans or guarantees of loans shall be made by the Partnership to the General Partner or any Affiliate of the General Partner.

All property in the form of cash not otherwise invested shall either be (i) deposited for the benefit of the Partnership in one or more accounts of the Partnership or any of its Affiliates, such accounts to be maintained in such financial institutions as the General Partner shall determine, (ii) invested in short-term liquid securities or other cash-equivalent assets, or (iii) left in escrow, and withdrawals shall be made only in the regular course of Partnership business on such signature or signatures as the General Partner may determine from time to time.

4.7 Removal and Appointment of General Partner. The General Partner shall be removed only upon its resignation as General Partner or upon the entry of a final, non-appealable order by a court of competent jurisdiction declaring that the General Partner has engaged in fraud or criminal misconduct with respect to the Partnership or the performance of its duties as General Partner. Upon the removal of the General Partner in accordance with the previous sentence, a Majority in Interest of the Limited Partners shall appoint another Person to serve as General Partner under the terms and conditions of this Agreement. The removal of the General Partner and the appointment of the replacement General Partner shall be effective at such time as the replacement General Partner agrees in writing to be bound by the terms of this Agreement and the Certificate is amended in accordance with the Act to reflect the replacement of the General Partner.

## V. - ROLE OF LIMITED PARTNERS

5.1 Rights or Powers. The Limited Partners shall not have any right or power to take part in the management or control of the Partnership or its business and affairs or to act for or bind the Partnership in any way; except for roles and responsibilities needed to qualify each Interest with a conditional permanent resident the removal of conditions on his or her residence for an approved I-829 Petition. A Limited Partner shall have all the rights, powers, privileges and duties granted to a limited partner under the Ohio Revised Uniform Partnership Act. The General Partner and the Limited Partners recognize that the United States Citizenship and Immigration Services can from time to time adjust to increase the roles and responsibilities needed to qualify for the removal of condition and the General Partner hereby consents to (1) notification of all Interests of such increase and (2) such increase in such duties.

5.2 Voting Rights. The Limited Partners shall have the right to vote on the matters specifically reserved for their approval or consent that are set forth in this Agreement.

5.3 Procedure for Consent. In any circumstances requiring the approval or consent of the Limited Partners as specified in this Agreement, such approval or consent shall, except as expressly provided to the contrary in this Agreement, be given or withheld in the sole and absolute discretion of the Limited Partners and conveyed in writing to the General Partner not later than thirty (30) days after such approval or consent was requested by the General Partner. The General Partner may require a response within a shorter time but in no event less than ten (10) Business Days. Failure to respond within any such time period shall be deemed to constitute a vote that is consistent with the General Partner's recommendation with respect to the proposal. If the General Partner receives the necessary approval or consent of the Limited Partners to such action, the General Partner shall be authorized and empowered to implement such action without any further authorization by the Limited Partners.

14

### VI. - BOOKS AND RECORDS

6.1 Books and Records. The Partnership shall maintain at its principal place of business separate books of account for the Partnership that shall show a true and accurate record of all costs and expenses incurred, all charges made, all credits made and received and all income derived in connection with the conduct of the Partnership and the operation of its business in accordance with generally accepted accounting principles consistently applied and, to the extent inconsistent therewith, in accordance with this Agreement. Any Partner or his designated representative shall have the right, at any reasonable time, to have access to and inspect and copy the contents of such books or records.

6.2 Tax Information. Necessary tax information shall be delivered to each Partner after the end of each Fiscal Year of the Partnership. Unless otherwise required by the Code, the Partnership shall use the cash method of accounting for income tax purposes.

### VII. - AMENDMENTS; ACTIONS OF THE PARTNERS

7.1 Amendments. (a) Subject to Section 7.1(c) hereof, this Agreement may be amended by the General Partner, in its  discretion and without action by the Limited Partners  to: (A) add to the representations, duties or obligations of the General Partner, or surrender any right or power granted to the General Partner herein, for the benefit of the Limited Partners or Economic Partners, as applicable; (B) cure any ambiguity, to correct or supplement any provision hereof that may be inconsistent with any other provisions hereof, or to make any other provision with respect to matters or questions arising under this Agreement not inconsistent with the intent of this Agreement; and (C) change any provision of this Agreement required to be so changed by the staff of the Securities and Exchange Commission or other federal agency, or by a state "Blue Sky" commissioner or similar official, which change is deemed by such commissioner, agency or official to be for the benefit or protection of the Limited Partners.

        b.        Subject to Section 7.1(c) hereof, this Agreement may be amended by the General Partner with the approval of a Majority in Interest of the Limited Partners.

        c.        Notwithstanding anything to the contrary in this Agreement, no amendment that would materially and adversely affect the rights of any Limited Partner disproportionately to the rights of the Limited Partners generally shall be made without the consent of each Limited Partner so materially, adversely and disproportionately affected.

7.2 Actions of the Partners. The Partners hereby agree and acknowledge that any vote, consent, approval or other action to be taken by or on behalf of the Limited Partners hereunder and not otherwise referred to in this Agreement shall be valid and effective for all purposes hereunder upon the taking of such action at a meeting or as evidenced in writing by or on behalf of the Limited Partners representing at least the Majority in Interest of the Limited Partners; *provided, however*, that with respect to any action by the Partners, any Limited Partner who is the subject of such action or against whom such action is to be enforced separate or apart from the other Limited Partners on behalf of the Partnership as a whole, shall be excluded from participating in any such action.

### VIII. - TRANSFERS OF INTERESTS

8.1 Restriction on Transfers. Except as otherwise permitted by this Agreement, no Partner may Transfer all or any portion of its Interest. In the event that any Partner pledges or otherwise encumbers any of its Interest as security for the payment of a debt, any such pledge or hypothecation shall be made pursuant to a pledge or hypothecation agreement that requires the pledgee or secured party to be bound by all of the terms and conditions of this ARTICLE VIII.

15

8.2 Permitted Transfers. Subject to the following conditions, a Limited Partner may at any time Transfer all or any portion of its Interest (any Transfer of such Interest satisfying such conditions precedent is referred to herein as a **"Permitted Transfer"**). A Transfer shall not be treated as a Permitted Transfer unless and until the following conditions are satisfied:

a. Except in the case of a Transfer of an Interest at death or involuntarily by operation of law, the transferor and transferee shall execute and deliver to the Partnership such documents and instruments of conveyance as may be necessary or appropriate in the opinion of counsel to the Partnership to effect such Transfer and to confirm the agreement of the transferee to be bound by the provisions of this ARTICLE VIII. In the case of a Transfer of an Interest at death or involuntarily by operation of law, the Transfer shall be confirmed by presentation to the Partnership of legal evidence of such Transfer in form and substance satisfactory to counsel to the Partnership. In all cases, the Partnership shall be reimbursed by the transferor and/or transferee for all costs and expenses that it reasonably incurs in connection with such Transfer.

b. Except in the case of a Transfer of an Interest at death or involuntarily by operation of law, unless such requirement is waived by the General Partner the transferor shall furnish to the Partnership an opinion of counsel, which counsel and opinion shall be satisfactory to the Partnership, that the Transfer will not cause the Partnership to terminate for federal income tax purposes.

c. The transferor and transferee shall furnish the Partnership with the transferee's taxpayer identification number and sufficient information to determine the transferee's initial tax basis in the Interest transferred, and any other information reasonably necessary to permit the Partnership to file all required federal and state tax returns and other legally required information statements or returns. Without limiting the generality of the foregoing, the Partnership shall not be required to make any distribution otherwise provided for in this Agreement with respect to any transferred Interest until it has received such information.

d. Except in the case of a Transfer of an Interest at death or involuntarily by operation of law, and unless such requirement is waived by the General Partner, the transferor shall provide an opinion of counsel, which opinion and counsel shall be satisfactory to the Partnership, to the effect that such Transfer is exempt from all applicable registration requirements and that such Transfer will not violate any applicable laws regulating the Transfer of securities.

e. Except in the case of a Transfer of an Interest at death or involuntarily by operation of law, the transferor shall provide, at the election of the General Partner, an opinion of counsel, which opinion and counsel shall be reasonably satisfactory to the other Partners, to the effect that such Transfer will not cause the Partnership to be deemed to be an "investment company" under the Investment Company Act of 1940, as amended.

8.3 Prohibited Transfers. Any purported Transfer of an Interest that is not a Permitted Transfer shall be null and void and of no force or effect whatsoever, provided that, if the Partnership is required to recognize a Transfer that is not a Permitted Transfer (or if the Partnership, in its sole discretion, elects to recognize a Transfer that is not a Permitted Transfer), the Interest transferred shall be strictly limited to the transferor's rights to allocations and distributions as provided by this Agreement with respect to the transferred Interest, which allocations and distributions may be applied (without limiting any other legal

16

or equitable rights of the Partnership) to satisfy the debts, obligations or liabilities for damages that the transferor or transferee of such Interest may have to the Partnership.  In the case of a Transfer or attempted Transfer of an Interest that is not a Permitted Transfer, the parties engaging or attempting to engage in such Transfer shall be liable to indemnify and hold harmless the Partnership and the Partners from all cost, liability and damage that any of such indemnified Persons may incur (including, without limitation, incremental tax liability and lawyers' fees and expenses) as a result of such Transfer or attempted Transfer and efforts to enforce the indemnity granted hereby.

8.4 Rights of Unadmitted Assignees.  A Person who acquires an Interest but who is not admitted as a substituted Limited Partner pursuant to Section 8.5 hereof shall be entitled only to allocations and distributions with respect to such Interest in accordance with this Agreement, and shall (i) have no right to any information or accounting of the affairs of the Partnership, (ii) not be entitled to inspect the books or records of the Partnership, and (iii) not have any of the rights of the General Partner or a Limited Partner under the Act or this Agreement.

8.5 Admission of Assignees as Partners.  Subject to the other provisions of this ARTICLE VIII, a transferee of an Interest may be admitted to the Partnership as a substituted Limited Partner only upon satisfaction of the conditions set forth below in this Section 8.5:

        a.      The General Partner consents to such admission, which consent may be given or withheld in the sole and absolute discretion of the General Partner;

        b.      The Interest with respect to which the transferee is being admitted were acquired by means of a Permitted Transfer;

        c.      The transferee becomes a party to this Agreement as a Limited Partner and executes such documents and instruments as the General Partner may reasonably request (including, without limitation, amendments to the Certificate) to confirm such transferee as a Limited Partner in the Partnership and such transferee's agreement to be bound by the terms and conditions hereof;

        d.      The transferee pays or reimburses the Partnership for all reasonable legal, filing, and publication costs that the Partnership incurs in connection with the admission of the transferee as a Limited Partner with respect to the transferred Interest;

        e.      The transferee provides the Partnership with evidence satisfactory to counsel for the Partnership that (i) such transferee is acquiring its Interest based upon its own investigation, (ii) such transferee's acquisition of its Interest is being made for its own account for investment and not with a view to the sale or distribution thereof, and (iii) such transferee is a sophisticated investor possessing an expertise in analyzing the benefits and risks associated with acquiring investments that are similar to the acquisition of its Interest; and

        f.      If the transferee is not an individual of legal majority, the transferee provides the Partnership with evidence satisfactory to counsel for the Partnership of the authority of the transferee to become a Partner and to be bound by the terms and conditions of this Agreement.

8.6 Covenants and Representations Regarding Transfers.

Each Partner hereby covenants, represents and agrees with the Partnership, for the benefit of the Partnership and all Partners, that (i) he is not currently making a market in the Interests, (ii) he will not

17

Transfer any Interest on an established securities market or a secondary market (or the substantial equivalent thereof) within the meaning of Code Section 7704(b) (and any Regulations, proposed regulations, revenue rulings, or other official pronouncements of the Internal Revenue Service or the Treasury Department that may be promulgated or published thereunder), and (iii) in the event such Regulations, revenue rulings, or other pronouncements treat any or all arrangements that facilitate the selling of partnership interests and that are commonly referred to as "matching services" as being a secondary market or substantial equivalent thereof, he will not Transfer any Interest through a matching service that is not approved in advance by the Partnership. Each Partner further agrees that he will not Transfer any Interest to any Person unless such Person agrees to be bound by this Section 8.6 and to Transfer such Interest only to Persons who agree to be similarly bound. The Partnership shall, from time to time and at the request of a Partner, consider whether to approve a matching service and shall notify all Partners of any matching service that is so approved.

8.7 Distributions and Allocations with Respect to Transferred Interests. If any Interest is sold, assigned or Transferred during any Allocation Year in compliance with the provisions of this ARTICLE VIII, Profits, Losses, each item thereof, and all other items attributable to such Interest for such Allocation Year shall be divided and allocated between the transferor and the transferee by taking into account their varying Interests during such Allocation Year in accordance with Code Section 706(d), using any conventions permitted by law and selected by the General Partner. All distributions on or before the date of such Transfer shall be made to the transferor, and all distributions thereafter shall be made to the transferee. Solely for purposes of making such allocations and distributions, the Partnership shall recognize such Transfer not later than the end of the calendar month during which it is given notice of such Transfer, provided that, if the Partnership is given notice of a Transfer at least ten (10) Business Days prior to the Transfer, the Partnership shall recognize such Transfer as of the date of such Transfer, and provided further that, if the Partnership does not receive a notice stating the date such Interest was transferred and such other information as the General Partner may reasonably require within thirty (30) days after the end of the Allocation Year during which the Transfer occurs, then all of such items shall be allocated, and all distributions shall be made, to the Person who, according to the books and records of the Partnership, was the owner of the Interest on the last day of the Allocation Year during which the Transfer occurs. Neither the Partnership nor any General Partner shall incur any liability for making allocations and distributions in accordance with the provisions of this Section 8.7, whether or not the General Partner or the Partnership has knowledge of any Transfer of ownership of any Interest.

## IX. - GENERAL PARTNER

9.1 Covenant Not to Withdraw, Transfer or Dissolve. Except as otherwise permitted by this Agreement, the General Partner hereby covenants and agrees not to (i) take any action to file a certificate of dissolution or its equivalent with respect to itself, (ii) take any action that would cause a Voluntary Bankruptcy of the General Partner, (iii) withdraw or attempt to withdraw from the Partnership, (iv) exercise any power under the Act to dissolve the Partnership, (v) Transfer all or any portion of its Interest as a General Partner other than in accordance with Section 9.2 hereof, or (vi) petition for judicial dissolution of the Partnership. Further, the General Partner hereby covenants and agrees to continue to carry out the duties of the General Partner hereunder until the Partnership is dissolved and liquidated pursuant to ARTICLE XI hereof.

9.2 Permitted Transfers.

The General Partner may Transfer all or any part of its Interest as a General Partner (i) at any time to another General Partner, if any, (ii) at death to its estate, heirs or legatees by will or intestacy, (iii) at any time to any Person who is the General Partner's Wholly

Owned Affiliate on both the day the General Partner became a General Partner and the day of such Transfer, or (iv) at any time involuntarily by operation of law, provided that no such Transfer shall be permitted unless and until all of the conditions set forth in Section 8.2 hereof are satisfied as if the Interest being Transferred was an Interest of a Limited Partner.

A transferee of an Interest from a General Partner hereunder shall be admitted as a General Partner with respect to such Interest if, but only if, (i) at the time of such Transfer, such transferee is otherwise a General Partner or (ii) the transferee is a Wholly Owned Affiliate of the transferring General Partner and all of the other General Partners, if any, consent to such admission.

A transferee who acquires an Interest from a General Partner hereunder by means of a Transfer that is permitted under this Section 9.2, but who is not admitted as a General Partner, shall have no authority to act for or bind the Partnership, to inspect the Partnership's books or otherwise to be treated as a General Partner, but such transferee shall be treated as a Partner who acquired an Interest in a Permitted Transfer under ARTICLE VIII hereof.

9.3 Prohibited Transfers. Any purported Transfer of any Interest held by a General Partner that is not permitted by Section 9.2 hereof shall be null and void and of no force or effect whatsoever, provided that, if the Partnership is required to recognize a Transfer that is not so permitted (or if the Partnership, in its sole discretion, elects to recognize a Transfer that is not so permitted), the Interest transferred shall be strictly limited to the transferor's rights to allocations and distributions as provided by this Agreement with respect to the transferred Interest, which allocations and distributions may be applied (without limiting any other legal or equitable rights of the Partnership) to satisfy the debts, obligations or liabilities for damages that the transferor or transferee of such Interest may have to the Partnership. In the case of a Transfer or attempted Transfer of an Interest that is not permitted by Section 9.2 hereof, the parties engaging or attempting to engage in such Transfer shall be liable to indemnify and hold harmless the Partnership and the other Partners from all cost, liability and damage that any of such indemnified Persons may incur (including, without limitation, incremental tax liability and lawyers' fees and expenses) as a result of such Transfer or attempted Transfer and efforts to enforce the indemnity granted hereby.

## X. - POWER OF ATTORNEY

10.1 General Partner as Attorney-In-Fact. Each Limited Partner hereby makes, constitutes and appoints the General Partner and each successor General Partner, with full power of substitution and re-substitution, his true and lawful attorney-in-fact for him and in his name, place and stead and for his use and benefit, to sign, execute, certify, acknowledge, swear to, file and record (i) all certificates of limited partnership, amended name or similar certificates, and other certificates and instruments (including counterparts of this Agreement) that the General Partner may deem necessary or appropriate to be filed by the Partnership under the laws of the State of Ohio or any other state or jurisdiction in which the Partnership is doing or intends to do business; (ii) any and all amendments or changes to this Agreement and the instruments described in (i), as now or hereafter amended, that the General Partner may deem necessary or appropriate to effect a change or modification of the Partnership in accordance with the terms of this Agreement, including, without limitation, amendments or changes to reflect (A) the exercise by any General Partner of any power granted to it under this Agreement, (B) any amendments adopted by the Partners in accordance with the terms of this Agreement, (C) the admission of any substituted Partner, and (D) the disposition by any Partner of its Interest; (iii) all certificates of cancellation and other instruments which the General Partner may deem necessary or appropriate to effect the dissolution and

19

termination of the Partnership pursuant to the terms of this Agreement; and (iv) any other instrument that is now or may hereafter be required by law to be filed on behalf of the Partnership or is deemed necessary or appropriate by the General Partner to carry out fully the provisions of this Agreement in accordance with its terms. Each Limited Partner authorizes each such attorney-in-fact to take any further action that such attorney-in-fact shall consider necessary or advisable in connection with any of the foregoing, hereby giving each such attorney-in-fact full power and authority to do and perform each and every act or thing whatsoever requisite or advisable to be done in connection with the foregoing as fully as such Limited Partner might or could do personally, and hereby ratifying and confirming all that any such attorney-in-fact shall lawfully do or cause to be done by virtue thereof or hereof.

10.2 Nature as Special Power.  The power of attorney granted pursuant to this ARTICLE XI:

    a.    Is a special power of attorney coupled with an interest and is irrevocable;

    b.    May be exercised by any such attorney-in-fact by listing the Limited Partners executing any agreement, certificate, instrument or other document with the single signature of any such attorney-in-fact acting as attorney-in-fact for such Limited Partners; and

    c.    Shall survive the death, disability, legal incapacity, bankruptcy, insolvency, dissolution or cessation of existence of a Limited Partner and shall survive the delivery of an assignment by a Limited Partner of the whole or a portion of his Interest, except that where the assignment is of such Limited Partner's entire Interest and the assignee, with the consent of the General Partner, is admitted as a Substituted Limited Partner, the power of attorney shall survive the delivery of such assignment for the sole purpose of enabling any such attorney-in-fact to effect such substitution.

## XI. - DISSOLUTION AND WINDING UP

11.1 Liquidating Events.  Partnership shall dissolve and commence winding up and liquidating upon the first to occur of any of the following ("Liquidating Event"):

    a.    The sale of all or substantially all of the Partnership's property;

    b.    The determination of the General Partner to dissolve, wind up and liquidate the Partnership;

    c.    The happening of any other event that makes it unlawful, impossible or impractical to carry on the business of the Partnership; or

    The withdrawal of a sole General Partner or any other event that causes a sole remaining General Partner to cease to be a general partner under the Act, provided that any such withdrawal or other event shall not constitute a Liquidating Event and the business of the Partnership shall continue if, within 180 days of such withdrawal or other event, a Majority in Interest of the Limited Partners appoint a successor General Partner, effective as of the date the former sole General Partner ceased to serve as General Partner.

The Partners hereby agree that, notwithstanding any provision of the Act, the Partnership shall not dissolve prior to the occurrence of a Liquidating Event.

20

11.2 Winding Up. Upon the occurrence of a Liquidating Event, the Partnership shall continue solely for the purposes of winding up its affairs in an orderly manner, liquidating its assets and satisfying the claims of its creditors and Partners, and no Partner shall take any action that is inconsistent with, or not necessary to or appropriate for, the winding up of the Partnership's business and affairs. To the extent not inconsistent with the foregoing, all covenants and obligations in this Agreement shall continue in full force and effect until such time as the Partnership's property has been distributed pursuant to this Section 11.2 and the Certificate has been cancelled in accordance with the Act. The General Partner (or, if there is no remaining General Partner, any person elected by a Majority in Interest of the Limited Partners) shall be responsible for overseeing the winding up and dissolution of the Partnership, shall take full account of the Partnership's liabilities and Property, shall cause the Property to be liquidated as promptly as is consistent with obtaining the fair value thereof and shall cause the proceeds therefrom, to the extent sufficient therefor, to be applied and distributed in the following order:

        a.    First, to the payment and discharge of all of the Partnership's debts and liabilities to creditors, including Partners;

        b.    The balance, if any, to the Partners in accordance with Section 3.1.

Notwithstanding the foregoing provisions of this Section 11.2, in connection with the final distribution, the General Partner may withhold up to ten percent (10%) of such liquidating distributions for the purpose of paying or satisfying accumulated Administration Fees and other expenses of the General Partner pursuant to Section 4.5 hereof.

11.3 Notice of Dissolution. If a Liquidating Event occurs or an event occurs that would, but for provisions of Section 11.1 hereof, result in a dissolution of the Partnership, the General Partner shall (i) within thirty (30) days thereafter, provide written notice thereof to each of the Partners and (ii) to the extent required under the Act or other law applicable to the Partnership, provide notice of the Liquidating Event to all other parties with whom the Partnership regularly conducts business (as determined in the discretion of the General Partner) and publish notice thereof in a newspaper of general circulation in each place in which the Partnership regularly conducts business (as determined in the discretion of the General Partner).

## XII - MISCELLANEOUS

12.1 Anti-Money Laundering Provisions.

        Each Limited Partner hereby acknowledges that the Partnership seeks to comply with all applicable laws concerning money laundering and related activities. In furtherance of those efforts, each Limited Partner hereby represents, warrants and agrees that, to the best of such Limited Partner's knowledge based upon appropriate diligence and investigation:

        none of the cash or property that such Limited Partner has paid, will pay or will contribute to the Partnership has been or shall be derived from, or related to, an activity that is deemed criminal under United States law; and

        no contribution or payment by such Limited Partner to the Partnership shall cause the Partnership or the General Partner to be in violation of the United States Bank Secrecy Act,

21

the United States Money Laundering Control Act of 1986 or the United States International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001.

Each Limited Partner agrees to promptly notify the General Partner if any of these representations and warranties cease to be true and accurate regarding such Limited Partner. Each Limited Partner agrees to provide to the General Partner any additional information regarding such Limited Partner that the General Partner deems necessary or appropriate to ensure compliance with all applicable laws concerning money laundering and similar activities.

Each Limited Partner agrees that if at any time the General Partner determines that any of the foregoing representations and warranties are incorrect with respect to such Limited Partner, or if otherwise required by applicable law or regulation related to money laundering and similar activities, the General Partner may undertake whatever actions it considers appropriate to ensure compliance with applicable law or regulation, consistent with the written advice of its external counsel delivered to such Limited Partner, including causing the withdrawal of such Limited Partner from the Partnership in accordance with such terms as the General Partner shall determine are required to comply with applicable laws and regulations.

Each Limited Partner further agrees that the Partnership or General Partner may release confidential information about such Limited Partner and, if applicable, any owners of it, legal or beneficial, to proper authorities if the General Partner, in its sole discretion, determines that it is in the best interests of Partnership in light of relevant rules and regulations under the laws described in this Section 12.1.

12.2 Notices. Any notice, payment, demand or communication required or permitted to be given by any provision of this Agreement shall be in writing and sent by electronic mail with confirmation of receipt back, regular mail with postage prepaid, or by facsimile, if such facsimile is followed by a hard copy of the facsimiled communication sent by regular mail with postage prepaid, and addressed as set forth on the Schedule of Partners, or to such other address as such Person may from time to time specify by notice to the Partners. Any such notice shall be deemed to be delivered, given, and received for all purposes as of the date so sent.

12.3 Binding Effect. Except as otherwise provided in this Agreement, every covenant, term and provision of this Agreement shall be binding upon, and inure to the benefit of, the Partners and their respective heirs, legatees, legal representatives, successors, transferees and assigns.

12.4 Construction. Every covenant, term and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against any Partner. The terms of this Agreement are intended to embody the economic relationship among the Partners and shall not be subject to modification by, or be conformed with, any actions by the Internal Revenue Service except as this Agreement may be explicitly so amended and except as may relate specifically to the filing of tax returns.

12.5 Headings. Section and other headings contained in this Agreement are for reference purposes only and are not intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

12.6 Severability. Every provision of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity or legality of the remainder of this Agreement.

22

12.7 Incorporation by Reference. Every exhibit, schedule and other appendix attached to this Agreement and referred to herein is not incorporated in this Agreement by reference unless this Agreement expressly otherwise provides.

12.8 Further Action. Each Partner, upon the request of any General Partner, agrees to perform all further acts and execute, acknowledge and deliver any documents that may be reasonably necessary, appropriate or desirable to carry out the provisions of this Agreement.

12.9 Governing Law. The laws of the State of Ohio shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the Partners.

12.10 Waiver of Action for Partition; No Bill for Partnership Accounting. Each of the Partners irrevocably waives any right that he may have to maintain any action for partition with respect to any of the Partnership Property. To the fullest extent permitted by law, each Partner covenants that it will not (except with the consent of the General Partner) file a bill for Partnership accounting.

12.11 Counterpart Execution. This Agreement may be executed in any number of counterparts with the same effect as if all of the Partners had signed the same document. All counterparts shall be construed together and shall constitute one agreement.

12.12 Sole and Absolute Discretion. Except as otherwise provided in this Agreement, all actions that the General Partner may take and all determinations that the General Partner may make pursuant to this Agreement may be taken and made at the sole and absolute discretion of the General Partner.

12.13 Specific Performance. Each Partner agrees with the other Partners that the other Partners would be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms and that monetary damages would not provide an adequate remedy in such event. Accordingly, it is agreed that, in addition to any other remedy to which the non-breaching Partners may be entitled, at law or in equity, the non-breaching Partners shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof.

[signature page follows]

23

     IN WITNESS WHEREOF, the undersigned Partners have executed this Agreement of Limited Partnership as of the date first above set forth.

**GENERAL PARTNER:**

GSC Opp Management, LLC,
an Ohio limited liability company

By: _____
      Name:
      Title:

**INITIAL LIMITED PARTNER:**

**GSC Opp Management, LLC, an Ohio
limited liability company**

By: _____
      Name:
      Title:

569447v1

24

**Schedule of Partners**

| Name and Address | Capital Contribution | Percentage Interest |
|---|---|---|
| GENERAL PARTNER | | |
| GSC Opp Management, LLC<br>650 Lunken Park Drive<br>Cincinnati, Ohio 45226 | $3,000,000 | 33 1/3% |
| | | |
| | | |
| | | |
| LIMITED PARTNERS | $6,000,000 | |
| | | 5.556% |
| | | 5.556% |
| | | 5.556% |
| | | 5.556% |
| | | 5.556% |
| | | 5.556% |
| | | 5.556% |
| | | 5.556% |
| | | 5.556% |
| | | 5.556% |
| | | 5.556% |
| | | 5.556% |
| Total | [$9,000,000] | 100.00% |

26

## COUNTERPART SIGNATURE PAGE AND ATTESTATION

By signing below, the undersigned is hereby made a party to the Agreement of Limited Partnership of GSC OPPORTUNITIES, L.P. (the "**Partnership**"), as such Agreement of Limited Partnership is in effect on the date hereof and as it is from time to time amended and/or restated hereafter (the "**Partnership Agreement**"), as a "Limited Partner" thereunder (subject to Redemption under Section 2.4 thereof), and the undersigned hereby agrees to be bound by and to comply with the terms of the Partnership Agreement. Certain terms used and not otherwise defined herein shall have the meanings given to such terms in the Partnership Agreement.

The undersigned hereby acquires a $500,000 Interest, in the form of a Capital Contribution, with voting rights as set forth in the Partnership Agreement.

The undersigned hereby represents and warrants to the Partnership:

1.      The undersigned understands that: (i) the limited partnership interests ("**Interests**") constitute a speculative investment involving a high degree of risk of loss by the undersigned of the undersigned's investment therein, and (ii) there are substantial restrictions on the transferability of the Interests. Accordingly, it may not be possible for the undersigned to liquidate the undersigned's investment in the Partnership in case of emergency.

2.      The undersigned is able: (i) to bear the complete loss of this investment, and (ii) to hold the Interests for an indefinite period of time. The undersigned represents that the undersigned has adequate means of providing for the undersigned's current needs and possible personal contingencies and that the undersigned has no need for liquidity in this particular investment.

3.      The undersigned has such knowledge and experience in financial and business matters that the undersigned is able to evaluate the risks in any investment in the Partnership. The undersigned acknowledges that the undersigned has been advised to discuss this investment with the undersigned's legal or other professional advisors, or with other investment representatives who have knowledge of business and financial matters. If the undersigned has not done so it is because, in the undersigned's opinion, the undersigned is personally capable of evaluating this investment and the Partnership and does not need the advice of other persons. The undersigned and, to the extent deemed necessary by the undersigned, any of the persons mentioned above have been afforded the opportunity to ask questions concerning this investment of officers of the Partnership and its general partner and have been furnished with such information with respect to the Partnership and its proposed operations as the undersigned has requested to the undersigned's satisfaction.

4.      The Interests are being acquired for the undersigned's own personal account for investment and not with a view toward dividing the undersigned's interests therein with others or reselling or otherwise disposing of all or any part of the same, or toward the distribution thereof within the meaning of the Securities Act of 1933, as amended (the "**Act**"), the Securities

27

Exchange Act of 1934, as amended (the "Exchange Act"), or applicable securities laws of any other jurisdiction (which, together with the Act and the Exchange Act, and all rules and regulations promulgated thereunder, are hereinafter referred to as the "Securities Laws").

5.      The undersigned is an "accredited investor" as such term is defined in the Securities Laws.

The foregoing representations, warranties, and undertakings are made by the undersigned with the intent that they be relied upon by the Partnership in determining the undersigned's suitability as an investor in the Partnership. The undersigned hereby agrees that such representations and warranties shall survive the undersigned becoming an interest holder in the Partnership. The undersigned further agrees to indemnify and hold harmless the Partnership, its partners, officers, attorneys, agents, and each other interest holder from any damages, claims, expenses, losses, or actions resulting from the untruth of any of the warranties and representations contained in this attestation.

**LIMITED PARTNER:**

PRINT NAME:   CHEN Baoyang

Signature:   BY-9-14                                    Name:   Title:   Email Address:

**AGREED TO AND ACCEPTED BY:**

**GSC OPPORTUNITIES, L.P.**
by   GSC Opp Management, LLC
its general partner
by:_____
Authorized Member

Signature:_____          Name:   **Title: Date:**_____, 2013

28