## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| **BAOYANG CHEN,** | : | Case no. 1:17-cv-460 |
| | : | |
| Plaintiff | : | Judge Michael R. Barrett |
| | : | |
| v. | : | **DEFENDANT GOLD STAR CHILI,** |
| | : | **INC.'S MOTION TO DISMISS** |
| **GSC OPPORTUNITIES, L.P., et al.,** | : | |
| | : | |
| Defendants. | : | |

Gold Star Chili, Inc., moves under Rule 12(b)(6) to dismiss all claims against it. This case involves several parties with confusingly names, and upon close inspection of the First Amended Complaint the Court will see that at least four of the seven claims against Gold Star are actually based on the conduct of those other parties. For instance, Gold Star cannot have breached a partnership contract, because Gold Star was not a party to that contract. Gold Star similarly cannot have breached any duties owed by partners to each other, because Gold Star was never a partner of the plaintiff. For the other three claims, the pleadings either do not satisfy the particularity requirements of Rule 9(b) and the Private Securities Litigation Reform Act, or reveal that the statute of limitations expired before the case was filed. Gold Star is entitled to judgment as a matter of law on all claims against it.

## I.     Standard of Review

The Court must construe the complaint in the light most favorable to the plaintiff

and accept as true all well-pleaded factual allegations, *see Roth Steel Prods v. Sharon Steel Corp.*, 705 F.2d 134, 155 (CA6 1983), but the Court need not accept as true legal conclusions or unwarranted factual inferences. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (CA6 1998).

Formulaic recitations of a claim's elements, conclusory assertions of wrongdoing, and mere labels are not sufficient. *See Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (CA6 2008), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678-89 (2009). If it not sufficient for a right to relief to be speculative or possible based on the pleaded facts—it must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible if it contains content from which the Court can draw the reasonable inference that the defendant is liable for the alleged conduct. *Id*. Conduct which is merely *consistent with* the defendant's liability does not satisfy the plausibility threshold. *Id*.

## II. Facts

Specific facts are discussed where appropriate in the argument section below, but according to the First Amended Complaint the general facts are these: Plaintiff Baoyang Chen, a Chinese citizen, alleges that he was duped into investing in the EB-5 visa program, and that he lost his $500,000 investment. The EB-5 program gives green cards to foreign citizens who invest in qualifying projects that create American jobs. The program is administered by the US Citizenship and Immigration Service, or USCIS.

Chen alleges that "in or before 2013," First Am. Compl., dkt. 26, PAGEID # 283, at ¶31, he was pitched on the EB-5 program, and that he received promotional materials relating to potential Gold Star Chili franchises from defendants Terry and Gary Chan. Chen agreed to invest, various partnerships or entities were created (many but not all of which are defendants here), and Chen's money was placed into escrow. Meanwhile USCIS reviewed Chen's eligibility for the program, and the Chans attempted to locate additional investors. Eventually, Chen alleges, the Chans were unable to find enough additional investors, but they took Chen's money out of escrow anyway, and used it for various impermissible purposes, including both personal uses and for investment in other restaurant franchises.

Chen has sued the Chans, several of their investment-vehicle entities, Gold Star, and several entities related to the other restaurant franchises. He has raised 23 claims in the First Amended Complaint. Gold Star is the target of seven of those claims. Two of the defendant entities have specific relevance to the claims against Gold Star. The first is GSC Opportunities, LP, which the parties refer to as "GSC." The other is GSC Opp Management, LLC, which the parties refer to as "GSC OPP."[1] The corporate structure of these entities is critically important to this case, and they are discussed below.

---

[1] Candidly, Gold Star finds these terms confusing, and instead of referring to GSC Opp Management, LLC as "GSC OPP," Gold star would have used the term "GSC Opp Management," or perhaps something like "GSC Manager," because it is the manager of GSC. Whenever the Court sees "GSC OPP," it may wish to mentally substitute "GSC Manager."

### III.    Argument

Gold Star is entitled to judgment as a matter of law on all claims raised against it. The pleadings establish that Gold Star and Chen are not partners. Because they are not partners, Gold Star is entitled to judgment as a matter of law on the claim for breach of a partnership agreement (count eight), breach of fiduciary duties owed by partners to each other(count nine), breach of statutory partnership duties (count ten), and breach of the statutory bar on self-dealing by partners (count twelve).

The pleadings also establish that despite the First Amended Complaint's impressive length, the remaining claims against Gold Star—for violation of federal and state securities law (counts six and sixteen), and for common law fraud (count seven)—are not pleaded with sufficient particularity to state any claim against Gold Star, and in any event are barred by the two-year statute of limitations.

### A.  Gold Star did not owe or breach any partnership-related obligations or duties to Chen because Gold Star and Chen were not partners.

Counts eight, nine, ten, and twelve of the First Amended Complaint all raise claims that rely on the assertion that Gold Star and Chen were partners. But in fact a close look at the First Amended Complaint establishes that Gold Star and Chen were not partners, and so all four of those claims must be dismissed.

### i.  The pleadings establish that Gold Star and Chen were not partners.

A court considering a motion to dismiss usually must accept all factual

allegations in the complaint as true, but a court can't accept as true factual allegations that are contradicted by a document attached to the pleadings. Such attachments are part of the pleadings for all purposes, *see* Fed. R. Civ. P. 10(c), and the terms of those attachments control when they present an "insuperable bar to relief." *Thomas v. Publrs. Clearing House*, 29 Fed. Appx. 319, 322 (CA6 2002) (upholding dismissal of breach of contract claim where documents identified in pleading disclaimed existence of a contract). *See also Keenan v. Adecco Employment Servs., Inc.*, Ohio App. 3d Dist., 2006-Ohio-3633, ¶8-13 (despite plaintiff's allegation that defendant had guaranteed a certain volume of business under two contracts, dismissal was appropriate where the contracts attached to the pleadings actually said that "there are no guarantees as to volume levels"). The Court also cannot accept legal conclusions couched as factual allegations. *See, e.g., Morgan v. Church's Fried Chicken*, 829 F.2d 10 (CA6 1987).

Here, while the First Amended Complaint implies that Gold Star and Chen may have been partners in GSC, and expressly alleges that Gold Star was a member of GSC OPP, *see* First Amend. Compl., dkt. 26, PAGEID # 290, at ¶59, the documents attached to the First Amended Complaint tell a different tale.

Gold Star was not a partner of GSC. The GSC "Partnership Agreement" defines the partners as "GSC Opp Management, LLC" (as both the general partner and "Initial Limited Partner"), and "the Persons executing separate counterpart signature pages to this Agreement as Limited Partners . . . ." *See* Partnership Agreement, dkt 26-3, PAGEID

# 486, at introductory paragraph. Plaintiff Chen is alleged to possibly have been a limited partner under the Partnership Agreement, *see* First Amend. Compl. dkt. 26, PAGEID # 278, at ¶1—though later the First Amended Complaint contradicts itself on this point, alleging that Chen was never admitted as a limited partner of GSC at all. *See* First Amend. Compl., dkt. 26, PAGEID # 312, ¶181.[2] It appears that in May 2013, Mason Hill LLC also became a limited partner of GSC. *See* Agreement of Limited Partnership of GSC, dkt. 26-5, PAGEID # 574, 577 (new Partnership Agreement executed by GSC OPP as general and limited partner, and by Mason Hill LLC as limited partner). But at no point in the sprawling First Amended Complaint is Gold Star alleged to have executed a counterpart signature page and thereby become a limited partner of GSC.

Gold Star also was not a member of GSC OPP. Even though the First Amended Complaint alleges in ¶59 that Mason Hill LLC and Gold Star were the members of GSC OPP, the operating agreement of GSC OPP says otherwise. According to that document (Exhibit D to the First Amended Complaint), the original members of GSC OPP were not Mason Hill LLC and Gold Star, but rather Mason Hill LLC and GSC EB-5 Investor, LLC. *See* Operating Agreement of GSC OPP, dkt. 26-4, PAGEID # 538 (list and signatures of "Members"). The operating agreement also shows that GSC EB-5 Investor

---

[2] The Court must view the First Amended Complaint in the light most favorable to Chen, but it also is free to consider these contradictions in making its plausibility determination; internally inconsistent (as opposed to alternative) factual allegations are not entitled to a presumption of truth under the plausibility standard. *See, e.g., Montague v. Schofield*, 2016 U.S. Dist. LEXIS 94677, at *7-8 (E.D. Tenn. no. 2:14-CV-292, July 19, 2016).

was the original manager of GSC OPP. *See id.* at PAGEID # 518, Art. I, §(l). There is no allegation in the First Amended Complaint that Gold Star was ever added as a member of GSC OPP, and there is no allegation in the First Amended Complaint that Gold Star was ever added as a manager of GSC OPP.[3]

### ii. Because Gold Star and Chen were not partners, Gold Star did not owe and could not have breached any partnership duties.

Because Gold Star was not a partner of GSC, it can't be liable to Chen for any his claims that are based on the duties (contractual, fiduciary, or statutory) that partners owe to each other or to the partnership.

Count eight of the First Amended Complaint alleges a breach of the GSC "Partnership Agreement." A partnership agreement is simply a contract, *see Kelley v. Ferraro*, Ohio App. 8th Dist., 188 Ohio App.3d 734, ¶3, 15-16, and "[a] contract is unenforceable against a person or entity who was not a party to the contract." *Wal-Mart Realty Co. v. Tri-County Commons Assoc., LLC*, Ohio App. 1st Dist., 2017-Ohio-9280, ¶11. Because the parties to the GSC Partnership Agreement were (at most) Chen, GSC OPP, and Mason Hill LLC, Gold Star cannot have breached the Partnership Agreement, and Gold Star is entitled to judgment as a matter of law on count eight.

Count nine of the First Amended Complaint alleges a breach of a fiduciary duty

---

[3] The First Amended Complaint does include a conclusory allegation that Gold Star "controlled" GSC OPP, *see* First Amend. Compl. dkt. 26, PAGEID # 317, 324, ¶211, 258 but because there are no factual allegations supporting this conclusion, the Court can't accept it as true.

by Gold Star, but Gold Star does not owe Chen a fiduciary duty. A fiduciary duty exists only where there is a "special confidence and trust" placed in someone such that "there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶16. *See also Dunina v. Lifecare Hosps of Dayton*, Ohio App. 2d Dist., 2006-Ohio-2824, ¶31 ("*both parties* must understand under the circumstances that a special trust and confidence has been reposed in one by the other") (emphasis added). No such relationship exists here. The First Amended Complaint has many allegations regarding how other defendants allegedly handled or mishandled Chen's money, but there are no facts showing any "special confidence and trust" between Chen and Gold Star. (In fact, so far as Gold Star can tell, the First Amended Complaint doesn't even allege that Chen ever spoke to or communicated with anyone at Gold Star at all.) The First Amended Complaint states that the "fiduciary relationship is confirmed by the [GSC] Partnership Agreement," First Amend. Compl., dkt. 26, PAGEID # 326, ¶270, but this can't plausibly be true, because as discussed, Gold Star is not a party to the Partnership Agreement. The Court also must disregard the general allegations in ¶269 and ¶272 of the First Amended Complaint that Gold Star owed Chen a fiduciary duty, because they are legal conclusions, not facts from which a fiduciary relationship could plausibly be found. Based on the facts in the First Amended Complaint, Gold Star did not have a "position of superiority or influence" that was "acquired by virtue of [the] special trust" that Chen placed in Gold Star and that Gold

Star accepted from Chen. Gold Star is entitled to judgment as a matter of law on the breach of fiduciary duty claim in count nine.

Count ten alleges gross negligence in a violation of the duty owed by a general partner to other partners under R.C. 1782.241(A). But again, Gold Star is not and never was a general partner of GSC—only GSC OPP was a general partner of GSC. *See* First Amend. Compl., dkt. 26, PAGEID # 278, at ¶3; *supra* p. 5. Gold Star therefore owed no duty under R.C. 1782.241(A), and Gold Star is entitled to judgment as a matter of law.

Count twelve alleges a breach of R.C. 1872.242's prohibition on a partner's self-dealing. Gold Star is entitled to judgment as a matter of law on this claim because it was not a partner of Chen, and also because the any self-dealing is not alleged to have been Gold Star's. Paragraph 288 of the First Amended Complaint, *see* dkt. 26, PAGEID # 330, explains that the alleged self-dealing on which this claim was based arises out of someone having "directed all of Plaintiff's investments to entities controlled by the Chans for the exclusive benefit of the Chans." Assuming the truth of this allegation, it still does not state a claim against Gold Star, which is not the Chans and is not controlled by the Chans. Gold Star is entitled to judgment as a matter of law.

### iii. Chen can't pierce the corporate veil of GSC to reach Gold Star, because Gold Star is neither a GSC partner, nor a member or manager of a GSC partner[1].

Even though Gold Star can't be directly liable to Chen on any of the foregoing claims, it appears that Chen is likely to argue that Gold Star can be liable if Chen pierces the

corporate veil of GSC and/or GSC OPP. This is wrong, for at least two reasons.

First, as discussed at some length above, Chen has misstated the corporate structure of GSC and GSC OPP, and the documents attached to the pleadings reveal that Gold Star is nowhere to be found in the ownership or managerial pedigree of either of those companies. Indeed, the pleadings establish that Gold Star is at least three levels removed from Chen, who was a limited partner of GSC (if he was anything at all; *see supra* n. 2 and accompanying text). The general partner of GSC was GSC OPP—not Gold Star. The member and manager of GSC OPP was non-party GSC EB-5 Investor LLC—not Gold Star. And while the First Amended Complaint includes a non-specific allegation that Gold Star has an interest in GSC EB-5 Investor LLC, *see* First Amend. Compl., dkt. 26, PAGEID # 282, ¶28, the pleadings do not identify Gold Star as either a member of a manager of GSC EB-5 Investor LLC.

Second, even if Gold Star were found in the corporate structure of the relevant companies, any claims about how or why Gold Star could be liable to Chen under a veil-piercing theory are so nebulously and unspecifically described as to fail the plausibility pleading requirement. To pierce a corporate veil, the facts must show that it is plausible that Chen could establish that "domination and control over [GSC] by [Gold Star] is so complete that [GSC] has no separate mind, will, or existence of its own." *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, ¶34 (affirming dismissal of piercing claim under Rule 12(B)(6)). Domination and control can be shown

by things like "(1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s)." *Wilson v. Superior Foundations, Inc.*, Ohio App. 12th Dist., 2008-Ohio-1359, ¶14. But while the First Amended Complaint doesn't hesitate to go into excruciating detail about what some of the other defendants allegedly did in this vein, *see, e.g.*, First Amend. Compl., dkt. 26, at ¶82-86 (alleging specific communications on specific dates); ¶89-104 (alleging specific withdrawals and payments, many of them down to the penny, on specific dates), the only allegations regarding Gold Star's alleged liability under a veil-piercing theory are entirely conclusory. *See* First Amend. Compl., dkt. 26, PAGEID # 280, ¶13 ("Gold Star controlled GSC Opp [Management], the managing partner of GSC, until at least November 14, 2016"); *id.* at PAGEID # 282, ¶28 (non-party GSC EB-5 Investor LLC is conclusorily alleged to have been "controlled by Gold Star"); *id.* at PAGEID # 312, ¶181 (alleging without specificity that "Gold Star . . . controlled GSC"). None of the indicia of domination and control are present. There is no allegation that Gold Star inadequately capitalized any entities, failed to observe corporate formalities, failed to create or

maintain corporate records, commingled assets, etc.[4] The First Amended Complaint's bare conclusions are not factual allegations from which the Court could say that it was plausible that Chen could establish a piercing claim against Gold Star.

Chen can't state a direct claim against Gold Star on counts eight, nine, ten, and twelve, and Chen hasn't pleaded any facts from which the Court could plausibly find any right to pierce any corporate veil to reach Gold Star. These claims must be dismissed.

**B. The First Amended Complaint does not adequately state any fraud claims against Gold Star.**

Counts six, sixteen, and seven allege violations of federal securities fraud law, Ohio securities fraud law, and common law fraud, respectively. But none of these claims are pleaded with the specificity and plausibility necessary to show that Gold Star made or is liable for any of the allegedly false or misleading statements. And in any event, the most plausible reading of the First Amended Complaint reveals the statute of limitations expired several months before the complaint was filed.

**i. The First Amended Complaint does not meet the particularity and plausibility requirements for securities fraud claims.**

All fraud claims require the plaintiff to allege, among other elements, that the defendant made a material false statement or omission, with the requisite level of fault or scienter, that the plaintiff reasonably relied on the statement, and that the plaintiff

---

[4] Chen recites the sound byte from piercing cases—that an entity has "no separate mind, will, or existence of its own"—seven times in the First Amended Complaint, but all of them are in reference to entities alleged to be dominated by the Chans. *See* First Amend. Compl., dkt. 26, PAGEID # 278-280, ¶5-12. The phrase is never used to describe Gold Star's control of an entity.

was damaged as a proximate result of false statement or omission. *See, e.g., In re Keithley Instruments, Inc. Sec. Litig.*, 268 F.Supp.2d 887, 896 (N.D. Ohio 2002); 17 CFR 240.10b-5.

Securities fraud claims under the Ohio Securities Act and common-law fraud claims must be pleaded with particularity. *See* Fed. R. Civ. P. 9(b); *Western & Southern Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 899 (S.D. Ohio 2014) (applying particularity standard to Ohio Securities Act claim). To satisfy the particularity requirements a plaintiff must allege, at minimum, "1) what the fraudulent statements were, 2) who made them, 3) when and where the statements were made, and 4) why the statements were fraudulent." *Western & Southern* at *id.* (quoting *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (CA6 2013)).

Securities fraud claims under federal law must be pleaded with particularity, too, but the Private Securities Litigation Reform Act goes even farther, mandating that "the complaint shall . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 USC 78u-4(b)(2). These requirements are satisfied "by alleging facts that give rise to a *strong* inference of reckless behavior," but the pleading requirements are *not* satisfied "by alleging facts that illustrate nothing more than a defendant's motive and opportunity to commit fraud." *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 551 (CA6 1999) (emphasis added). "Reckless behavior" means "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger may not be known, it

must at least be so obvious that any reasonable man would have known of it." *Id.* at 550.

These requirements are not satisfied by the First Amended Complaint, for at least five reasons.

First, Chen has not pleaded with particularity any facts from which the Court can determine that any statements were made *by Gold Star*. Instead, the complaint vaguely alleges that "All or some of the Defendants began marketing GSC to foreign investors eager to use the EB-5 visa process in or before 2013." First Amend. Compl., dkt. 26, PAGEID # 283, at ¶31. This, along with Chen's use of the passive voice, *see, e.g., id.* at ¶36, is Chen's way of "subtly avoiding identification of who the actors were," which is a hallmark of vagueness and does not satisfy the particularity requirement. *In re Keithley*, 268 F.Supp.2d at 898. Similarly, while the First Amended Complaint points to the "Business Plan" (Exhibit B to the First Amended Complaint) as the source of the false statements, there are no allegations (much less particularized allegations) that Gold Star prepared or approved—or even saw—the Business Plan. In fact, Chen alleges that the Business Plan was prepared by Terry and Gary Chan, not by Gold Star. *See* First Amend. Compl., dkt. 26, PAGEID # 285, at ¶35. Even if Chen had alleged that Gold Star was the source of information for the Chans, absent particular allegations showing how Gold Star and the Chans were "entangled" with each other, the claim must be dismissed. *See In re Keithley*, 268 F.Supp.2d at 906 (dismissing Rule 10b-5 claim where there was "a dearth of detail" in the complaint showing that the corporation was the

source of others' false statements), citing *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1126 (W.D. Mich. 1996) (dismissing claim "unless a plaintiff can plead with particularity who among defendants supplied the information, how it was supplied, and how defendants could have controlled the content of the statement.").

Second, regardless of the source of the statements, Chen has not pleaded with particularity any facts showing that Gold Star was an issuer, seller, or dealer of any security such that liability under Rule 10b-5 or the Ohio Securities Act would attach. For instance, in addition to generally alleging that Terry and Gary Chan pitched the investment, *see* First Amend. Compl., dkt. 26, PAGEID # 283, at ¶31, the First Amended Complaint, from the first paragraph, repeatedly alleges that the investment was "in GSC," not in Gold Star. *See id.* at ¶1 (Chen was "a limited partner in GSC"); ¶17 (referring to Chen's "investment . . . in GSC"); ¶20 (alleging that Chen was "lured . . . into investing in GSC"); ¶57 (Chen executed the Partnership Agreement, "making him an investor in GSC"). The First Amended Complaint also alleges that the Chans, not Gold Star, benefitted from the alleged fraud. *See id.* at ¶288 (scheme was "for the exclusive benefit of the Chans"). If true, these allegations at best show that GSC was an issuer and that Terry and Gary Chan were sellers, and that the Chans benefitted. Gold Star was not and did not, and so it cannot be liable. *See, e.g.,* R.C. 1707.41(A) (establishing liability for one who "offers any security for sale, or receives the profits accruing from such sale").

Third, Chen has not pleaded with particularity any facts from which the Court can draw a "a strong inference of reckless behavior" as the PSLRA requires, *see* 15 USC 78u-4(b)(2), much less of intentional behavior as Ohio law requires. *See Western & Southern*, 54 F. Supp. 3d at 910 (Ohio law requires "that a defendant act with an intent to mislead or deceive"). The Sixth Circuit has identified a number of "factors that are usually relevant to this [scienter] inquiry," including discrepancies between internal reports and statements to investors, the closeness in time between an allegedly fraudulent statement and the disclosure of inconsistent information, disregard of current information when making a statement, evidence of bribery, evidence of self-dealing, and others. *In re Keithley*, 268 F.Supp.2d at 895, citing *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (CA6 2001). None of those factors are present here with respect to Gold Star. Even if Gold Star made the statements in the Business Plan, there is no particularized allegation that Gold Star had contrary internal reports when it did so. The time lapse between the allegedly fraudulent statement and the discovery of later inconsistent information was significant—a year or more. There is no particularized (or even general) factual allegation that Gold Star disregarded any current information, that it engaged in any bribery, or that it engaged in any self-dealing. Far from alleging that Gold Star engaged in "highly unreasonable conduct which is an extreme departure from the standards of ordinary care," *In re Comshare, Inc. Sec. Litig.*, 183 F.3d at 550, what the First Amended Complaint shows is that Gold Star (a) had no apparent role in the

pitching of the investment to Chen, *see supra* at p. 14, (b) had no role in the management of GSC or GSC OPP, *see supra* at p. 5, and (c) gave "explicit instruction" to the Chans that they were not to use Chen's funds. *See* First Amend. Compl., dkt. 26, PAGEID # 296, ¶93. There is nothing reckless or intentionally fraudulent about that.

Fourth, Chen has not pleaded with particularity any facts showing that any conduct of Gold Star was the proximate cause of any loss. Rather than causing a loss, the First Amended Complaint alleges that Gold Star gave an "explicit instruction" to the Chans that, if followed, would have mitigated or eliminated loss. *See* First Amend. Compl., dkt. 26, PAGEID # 296, ¶93.

Fifth, it is not even clear that any interest in GSC qualifies as a "security" of the type regulated by the Securities Act or the Exchange Act. As the Supreme Court observed in *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837 (1975), a "security" exists where "the investor is 'attracted solely by the prospects of a return' on his investment . . . ." *Id.* at 852 (quoting *SEC v. W. J. Howey Co.*, 328 U.S. 293, 300 (1946)). Here, the most plausible reading of the First Amended Complaint is that Chen was motivated not by the prospect of profit, but by the prospect of obtaining a green card. Because Chen's alleged interest in GSC was not a "security," Gold Star is entitled to judgment as a matter of law on the securities fraud claims.[5]

---

[5] Gold Star concedes that the SEC has treated EB-5 investments as securities for agency-enforcement-action purposes, *see Investor Alert: Investment Scams Exploit Immigrant Investor Program*, SEC & USCIS (Oct. 9, 2013), *available at* https://www.uscis.gov/news/alerts/investor-alert-investment-scams-exploit-immigrant-investor-

Because Chen has not satisfied the particularity pleading requirement on any of these fraud elements, Gold Star is entitled to judgment as a matter of law.

### ii. The two-year statute of limitations expired no later than December 31, 2016.

Both federal and state securities fraud claims are subject to two-year statutes of limitations. *See* 28 USC 1658(b); R.C. 1707.43(B). While common-law fraud claims in Ohio are typically subject to a four-year statute of limitations, when the alleged fraud "arises from or is predicated upon the sale of securities," then the two-year securities fraud statute of limitations applies; otherwise, form is elevated over substance. *Western & Southern*, 54 F. Supp.3d at 900. The statute begins to run upon the earlier of the time when a plaintiff did discover, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010). Even though a statute of limitations is an affirmative defense that normally is not appropriate for disposition under Rule 12(b)(6), the Court must grant such a motion if the time bar appears on the face of the complaint. *See Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 551 F. Supp. 580, 591 (S.D. Ohio 1982) (granting motion to dismiss because securities fraud claim was untimely).

Here, Chen's claim against Gold Star is rooted in the allegedly false or

---

program (last visited Jan. 31, 2018), but Gold Star is not aware of any cases in which courts have found that such investments constitute "securities" for purposes of a private action.

misleading statements in the Business Plan and GSC Partnership Agreement.[6] Chen alleges that he received the Business Plan from one of the Chans in March of 2013. *See* First Amend. Compl., dkt. 26, PAGEID # 281, 283, at ¶20, 31. Chen alleges that he executed the Partnership Agreement in April of 2013, *id.* at ¶57, and that the Business Plan was attached to the Partnership Agreement when he did so. *Id.* at ¶38. Chen also alleges that the Business Plan—i.e., the reason for his investment—provided among other things that all "investor funds would be released from escrow by November 1, 2013"; that three "restaurants would be operational by March 1, 2014," that six would be operational by July 2014, that nine would be operational by November 2014, and that twelve would be operational by March 2015; and that Chen would have his I-526 application approved by USCIS in 2014. *Id.* at ¶36. Chen now alleges that all of the promises that these things would happen were false and fraudulent.

But Chen also alleges that none of these things happened. He alleges that his money was released from escrow in 2016, not November 2013. *Id.* at ¶83 et seq. He alleges that only two restaurants were operational prior to March 2014, *id.* at ¶70-71, and that so far as he knows GSC never made it to twelve restaurants at all. *Id.* at ¶72. He alleges that his I-526 was approved not in 2014, but on May 7, 2015. *Id.* at ¶106.

---

[6] Chen has vaguely pleaded all of his claims against Gold Star, but with respect to the allegations about money going missing, Chen is very specific—the diversion of funds is alleged not only to have been done by someone other than Gold Star, but also to have been done against the explicit instruction of Gold Star. *See* First Amend. Compl., dkt. 26, PAGEID # 296, ¶93. This conduct therefore cannot possibly be the basis of any claim against Gold Star.

Based on these allegations, Chen knew—or at minimum, a reasonably prudent person in Chen's situation would have known—of the facts constituting the alleged fraud when those events failed to happen. He would have known those facts as early as November 2013, when his money was not released from escrow, and he would have known those facts no later than the end of 2014, when his I-526 had not yet been approved. The two-year statute of limitations therefore would have run as early as November 2015, and no later than the end of 2016. But this case was not filed until July 2017. *See* Compl., dkt. 1. Gold Star was not added as a party until November 2017. *See* First Amend. Compl., dkt. 26. The claims therefore are untimely by at least seven months, and as long as about two years. Gold Star is entitled to judgment as a matter of law on these claims.

## IV. Conclusion

For the foregoing reasons, Gold Star is entitled to judgment as a matter of law on all claims against it, and those claims must be dismissed.

Respectfully Submitted,

/s/ *Jeffrey M. Nye*
Paul T. Saba (0063723)
Jeffrey M. Nye (0082247)
STAGNARO, SABA & PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-6714
(513) 533-6711 – fax
jmn@sspfirm.com
**Attorneys for Defendant Gold Star Chili, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served upon all parties through the court's CM/ECF system on the date of filing.

<u>/s/ Jeffrey M. Nye</u>
Jeffrey M. Nye