# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| **BAOYANG CHEN,** | **:** | Case no. 1:17-cv-460 |
| | **:** | |
| Plaintiff, | **:** | Judge Michael R. Barrett |
| | **:** | |
| v. | **:** | **DEFENDANT GOLD STAR CHILI,** |
| | **:** | **INC.'S MOTION TO DISMISS** |
| **GSC OPPORTUNITIES, L.P., et al.,** | **:** | **SECOND AMENDED COMPLAINT** |
| | **:** | |
| Defendants. | **:** | |

Defendant Gold Star Chili, Inc., moves under Rule 12(b)(6) to dismiss all claims raised against it in the second amended complaint (doc. 110).

In this case, the plaintiff alleges that he was bilked out of an investment he made as part of his effort to obtain a green card. The essence of the second amended complaint is described in ¶16, under the heading "Nature of the Action": "The Chans [the defendants other than Gold Star] have orchestrated a complex enterprise, run through the Chan Entities, to convert the funds of Plaintiff and other GSC investors. The Chans utilized this enterprise to enrich themselves, improperly pay off debts that have nothing to do with GSC, and inappropriately finance the operation of other entities they control."

Gold Star is conspicuously absent from the plaintiff's succinct summary of his own case.

His explanation of why he also sued Gold Star appears in the next paragraph:

1

"The Chans were able to execute this complex enterprise because Gold Star, GSC OPP, and GSC EB5 abdicated contractual and fiduciary duties to Plaintiff and other GSC investors. Further, as is detailed below, many of these defendants were involved in preparing false materials provided to Plaintiff and potential GSC investors, and failed to correct misleading communications sent to Plaintiff."

But the complaint goes on to describe a series of relationships and transactions which make clear the problem with that explanation: Gold Star did *not* owe any contractual or fiduciary duties to the plaintiff. Indeed, taking all the allegations as true, what the plaintiff describes in some detail is at least three degrees of separation between himself and Gold Star, and between the Chans and Gold Star—consciously designed, diligently implemented, and entirely appropriate buffers.

The second amended complaint has fifteen claims, but only eight of them are against Gold Star. Half of those claims rely on or relate to some form of partnership, so this brief will address the partnership claims first. It will then address the federal securities fraud claim, the state-law securities fraud claims, and the conspiracy claim. Gold Star is entitled to judgment as a matter of law on all of them.

## I.     Standard of review

The Court must construe the complaint in the light most favorable to plaintiff and accept as true all well-pleaded factual allegations, *see Roth Steel Prods v. Sharon Steel Corp.*, 705 F.2d 134, 155 (CA6 1983), but it need not accept legal conclusions or unwarranted

2

factual inferences. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (CA6 1998).

Formulaic recitations of a claim's elements, conclusory assertions of wrongdoing, and mere labels are not sufficient. *See Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (CA6 2008), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678-89 (2009). It is not sufficient for a right to relief to be speculative or possible based on the pleaded facts—it must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible if it contains content from which the Court can draw the reasonable inference that the defendant is liable for the alleged conduct. *Id.* Conduct which is merely *consistent with* the defendant's liability does not satisfy the plausibility threshold. *Id.*

## II.    General facts and background

Plaintiff Baoyang Chen, a Chinese citizen, alleges that he was duped into investing in the EB-5 visa program, and that he lost his $500,000 investment. The EB-5 program gives first visas, and then green cards, to foreign citizens who invest in qualifying projects that create American jobs.

Chen alleges that in early 2013, Gold Star and others developed a plan to attract potential EB-5 investors into opening new Gold Star restaurant locations. Chen alleges that Gold Star was intimately involved in creating the corporate structure of the investment vehicle and entities—a structure that included at least three limited-liability entities between Gold Star and any investors. Specifically, the plaintiff alleges that

investors like himself would be limited partners in GSC Opportunities, LP ("GSC"). The general partner of GSC would be GSC Opportunities Management, LLC ("GSC Opp"). The members of GSC Opp would be Mason Hill, LLC (a company owned and operated by Gary, Terry, and Jacqueline Chan) and GSC EB5 Investor, LLC. Gold Star finally makes its appearance as the member (though not the manager) of GSC EB5.

Chen alleges that Gold Star was involved with the creation of the "Business Plan" and "promotional materials" for GSC, which included specific representations and timelines on which he claims to have reasonably relied—that his investment money would be released from escrow by November 2013; that at least three restaurants would be operational by March 2014; that at least six restaurants would be operational by July 2014; and that Chen would receive his visa by late 2014. *See* Business Plan, doc. 110-1, PAGEID # 1617.

Chen alleges that it was Gary and Terry Chan—not Gold Star—who actually solicited his investment. *See* doc. 110, PAGEID # 1558, at ¶67. Chen alleges that immediately after he signed on as a limited-partner investor in GSC in April 2013, the scope of the project was altered to reduce the number of restaurants that would be opened from twelve to six. *Id.* at ¶108-111. But he does not allege that any other timeline targets were changed, and he does not allege that the alterations would have affected his eligibility under the EB-5 program. *See id.* at ¶23. He alleges that every one of those 2013 and 2014 benchmarks was missed, and that Gold Star decided not to participate

4

further in the Chans' EB-5 program in 2015 (see part III(B)(1)(a) below for details and citations). Finally, he alleges that in August 2016 (a full year after Gold Star decided to end its involvement in the investment program) Gary Chan stole the plaintiff's money out of escrow and laundered it through the "Chan Entities" (i.e., not Gold Star) "for the exclusive benefit of the Chans." *Id.* at ¶342 Gold Star is neither alleged to have received even a penny of the plaintiff's money, nor to have had any involvement in stealing it. (In fact, the second amended complaint alleges that Gold Star warned Gary Chan multiple times not to try to remove any money from escrow, and that Gary Chan confirmed multiple times that he would not. *Id.* at ¶147-149.)

Even though the plaintiff claims that he specifically relied on the timeline in the Business Plan, he waited more than four years after the first missed deadline (and more than three years after the latest missed deadline) to accuse Gold Star of securities fraud—well outside the two-year statute of limitations for this type of claim. The other claims against Gold Star are simply not based on Gold Star's conduct.

### III.  Argument

### A.  Gold Star is entitled to judgment as a matter of law on Counts VIII, IX, X, and XII because it was not a partner of the plaintiff.

Count VIII is a breach of contract claim in which the plaintiff alleges that Gold Star (and others) breached the "Partnership Agreement," defined in ¶80 as the "Agreement of Limited Partnership" under which GSC was formed and the plaintiff was admitted as a limited partner. The Partnership Agreement is in the pleadings as

Exhibit B to the second amended complaint (doc. 110-2). It is governed by Ohio law. *See id.* at §12.9, PAGEID #1713.

A partnership agreement is simply a contract, *see Kelley v. Ferraro*, Ohio App. 8th Dist. 2010, 188 Ohio App.3d 734, ¶3, 15-16, and "[a] contract is unenforceable against a person or entity who was not a party to the contract." *Wal-Mart Realty Co. v. Tri-County Commons Assoc., LLC*, Ohio App. 1st Dist., 2017-Ohio-9280, ¶11.

The Partnership Agreement itself identifies the parties as GSC Opp (the general and initial limited partner; see PAGEID #1691) and the plaintiff (a limited partner; see PAGEID #1718). There is no allegation that Gold Star ever executed the Partnership Agreement, nor that Gold Star ever became a party through an assignment. Even if there were such an allegation, it would be contradicted by the express text of the document, and the Court should ignore it. *See, e.g., Thomas v. Publrs. Clearing House*, 29 Fed. Appx. 319, 322 (CA6 2002) (court should ignore allegations when documents in pleading present an "insuperable bar to relief"); *Keenan v. Adecco Employment Servs., Inc.*, Ohio App. 3d Dist., 2006-Ohio-3633, ¶8-13 (despite plaintiff's allegation that defendant had guaranteed a certain volume, dismissal was appropriate where contracts in pleadings said that "there are no guarantees as to volume levels"). The Court also cannot accept legal conclusions couched as factual allegations, *see, e.g., Morgan v. Church's Fried Chicken*, 829 F.2d 10 (CA6 1987), so even if the plaintiff had alleged that Gold Star was somehow a party to the Partnership Agreement, his failure to plead facts

6

showing that Gold Star executed it would make his pleading deficient.

Because Gold Star was not a party to the Partnership Agreement, it is entitled to judgment as a matter of law on Count VIII of the second amended complaint.

In Count IX, the plaintiff alleges that Gold Star breached "a statutory, contractual, and common law duty of the utmost good faith and loyalty." Doc. 110 at PAGEID #1598, ¶323. The only "contractual" source of any alleged fiduciary duty identified by the plaintiff is the Partnership Agreement. *See id.* at PAGEID #1599, ¶324. But there cannot plausibly be any fiduciary duty owed by Gold Star to the plaintiff under the Partnership Agreement because Gold Star was not a party to that contract.

The plaintiff does not allege any facts which would establish either a statutory or common law fiduciary duty, either. A fiduciary duty exists only where there is a "special confidence and trust" placed in someone such that "there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶16. *See also Dunina v. Lifecare Hosps of Dayton*, Ohio App. 2d Dist., 2006-Ohio-2824, ¶31 ("*both parties* must understand under the circumstances that a special trust and confidence has been reposed in one by the other") (emphasis added). No relationship of that type is pleaded here. The plaintiff pleads in detail his dealings with the Chans, but he doesn't even allege that he *communicated* with anyone at Gold Star, much less established a special relationship of confidence and trust. Without that relationship, there can be no fiduciary duty, and Gold Star is entitled

7

to judgment as a matter of law on Count IX.

On top of this, the statute of limitations for a breach of fiduciary duty claim is four years, and the discovery rule doesn't apply. *See* R.C. 2305.09(D); *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 182 (discovery rule in R.C. 2305.09 applies only to fraud and certain trespasses). The claim accrues when the conduct occurs, not when the plaintiff discovers it, and not when the plaintiff suffers a loss. *See Helman v. EPL Prolong, Inc.*, Ohio App. 7th Dist. 2000, 139 Ohio App. 3d 231, 249 (applying *Investors REIT One* and rejecting delayed-damages theory). That means that to the extent that the plaintiff is basing his breach-of-fiduciary-duty claim on conduct that occurred before November 22, 2013 (e.g., "preparing false materials," "misleading communications," or altering GSC's structure in April and May 2013, *see* doc. 110, ¶¶17, 119), that claim is time-bared.

One other point is worth mentioning here. This section of the complaint does include an allegation (see ¶326) in which the plaintiff lists a series of actions relating to either directly "converting [the plaintiff's] funds" or failing to prevent the conversion of his funds. Even accepting these allegations as true, Chen does not allege that *Gold Star* misappropriated his investment at all. Instead, he alleges that it was stolen by Gary Chan (and possibly other Chans) "for the exclusive benefit of the Chans," *see* ¶342, and that it was stolen in August 2016, *see* ¶151—a full year after Gold Star decided not to move forward with any new EB5 restaurants with the Chans, *see* ¶136, and after Gold Star expressly and repeatedly warned the Chans not to touch the money. *Id*. at ¶¶147-

151. At no point does Chen explain how Gold Star is liable for the conduct of other parties who acted both for their own benefit and of their own accord, and also in defiance of Gold Star's express direction and after it dissociated itself from those parties. The claims against Gold Star beggar belief. There is no plausible right to relief.

Count X is a claim for gross negligence in violation of R.C. 1782.241(A). That statute describes duties owed by general partners to a partnership and to limited partners, but the plaintiff and Gold Star are not and never were partners. Gold Star is entitled to judgment as a matter of law on this claim.

Count XII alleges that the plaintiff is entitled to "rescission of the BWR Investment" due to a violation of R.C. 1782.242's prohibitions on self-dealing by partners. There is no explanation for how or why Gold Star would be liable here. Gold Star was not and is not a partner of the plaintiff, so R.C. 1782.242 does not apply to Gold Star in the first place. Even if Gold Star had been a partner, the "BWR Investment" refers to the Chans' decision to use the plaintiff's investment funds in Buffalo Wings & Rings restaurants (hence "BWR"), rather than in Gold Star restaurants. *See* doc. 110 at ¶187, ¶199. Gold Star is, of course, not Buffalo Wings & Rings, and is not alleged to have had any dealings with Buffalo Wings & Rings. In fact, the plaintiff even alleges that the self-dealing on which he bases this claim was self-dealing "by the Chans for the exclusive benefit of the Chans," *see* ¶342. There is nothing to rescind with respect to Gold Star, and so Gold Star is entitled to judgment as a matter of law on this claim.

9

      **B.**     **Gold Star is entitled to judgment as a matter of law on the fraud claims because the statute of limitations expired, and because the plaintiff has not alleged with particularity any fraudulent conduct by Gold Star.**

          **1.**     **The federal securities fraud claims fail for several reasons.**

Count VI alleges that Gold Star committed federal securities violations. The specific conduct on which the plaintiff bases this claim is his having been "provided with promotional materials, a Business Plan, and a Partnership Agreement" that were (he claims) materially misleading. *See* Second Amended Complaint, doc. 110, at PAGEID #1593-1594, ¶288. The plaintiff alleges that these misrepresentations induced him "to invest in GSC." *Id.* at ¶291. There are at least three reasons that Gold Star is entitled to judgment as a matter of law on this claim.

          **a.**   **The statute of limitations expired as early as April 2015 and no later than November 2016.**

First, the statute of limitations expired. The statute of limitations for securities fraud claims is two years, measured from the date that the plaintiff knew or should have known of the facts giving rise to the claim. *See* 28 USC 1658(b)(1); *Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010). Actual notice or knowledge of the alleged fraud is not required; a plaintiff is on notice "by evidence of the *possibility* of fraud, not full exposition of the scam itself." *In re EveryWare Global, Inc. Securities Litigation*, 175 F. Supp. 3d 837, 863 (S.D. Ohio 2016) (emphasis in original).

The plaintiff alleges that he was provided with the promotional materials, the Business Plan (doc. 110-1), and the Partnership Agreement (doc. 110-2) in the spring of

2013. All are alleged to have been provided before the plaintiff executed the GSC Partnership Agreement on April 20, 2013. *See id.* at PAGEID #1564, ¶106. The Business Plan itself (on which the plaintiff alleges he relied) included a detailed timeline for the project. Among other things, it provided that Chen's escrowed investment funds "would be released from escrow to [the] project" by November 1, 2013; that "three restaurants [would be] operational and and [sic] a total of 48 full time positions [would be] created" by March 1, 2014; that "six restaurants" and "96 full time positions" would be open and created by July 1, 2014; and that Chen would receive his visa within 180 days of May 1, 2014 (i.e., by late October, 2014). *See* Business Plan, doc. 110-1, at PAGEID #1617.

None of those things happened. The plaintiff alleges in ¶161 that Chen's funds remained in escrow until August 2016 and were then transferred by Gary Chan, not by Gold Star. *Id*. The plaintiff also alleges that only two restaurants were ever developed, both in 2013—not the three he was promised by March 2014, nor the six he was promised by July 2014. *See id.* at ¶126-127. Chen alleges that he never received his visa at all, even though he was promised it by late October 2014, at the latest. *See id.* at ¶325.

Chen also alleges that he was deceived by several changes to the partnership structure that were made "about three weeks after [Chen] executed the Partnership Agreement"—in other words, in the first half of May 2013.

Any of these facts on their own—but especially all of them taken together—are

11

sufficient "evidence of the possibility of fraud" to put the plaintiff on notice of his claim. The two-year statute of limitations therefore began to run as early as April 20, 2013, when the allegedly fraudulent statements were made, and alternatively began to run in early May 2013 (when changes are alleged to have been made to the partnership structure); on November 1, 2013 (when Chen's funds were not released from escrow); on March 1, 2014 (when only two of the promised three restaurants had opened; on July 1, 2014 (when only two of the promised *six* restaurants had opened); or in October 2014 (when Chen had not received his visa). Under the best-case scenario for Chen, therefore, the two-year statute of limitations expired in late October 2016. He did not raise any claims against Gold Star until he filed the first amended complaint (doc. 26) on November 22, 2017. His claims are untimely.

### b. No fraud is attributable to Gold Star; any conduct attributable to it is not fraudulent and/or not pleaded with particularity.

The second reason that Chen's federal securities-fraud claim fails as a matter of law is that it does not allege with particularity any fraudulent conduct *by Gold Star*. Most or all of the allegedly fraudulent conduct complained of, when the document is read as a whole, is clearly attributable to other parties:

- The plaintiff's investment was "in GSC," not Gold Star. *See* doc. 110 at ¶1.

- Upon the occurrence of a "Liquidating Event," his investment was required to be returned by GSC or GSC Opp, not by Gold Star. *See* ¶¶95-98.

- The money was stolen by Gary Chan, not by Gold Star, *see id.* at ¶¶230-236; 244; was stolen "for the exclusive benefit of the Chans," not for the benefit

12

of Gold Star, *id.* at ¶342; and was laundered through "entities controlled by the Chans," not through Gold Star. *Id.*

Similarly, while the plaintiff occasionally gets loosey-goosey with his description of who did what, *cf. In re Keithley Instruments, Inc. Sec. Litig.*, 268 F.Supp.2d 887, 898 (N.D. Ohio 2002) (explaining that "subtly avoiding identification of who the actors were," is a hallmark of vagueness and does not satisfy the particularity requirement), it is clear in context that some things he attributes to Gold Star cannot possibly have been done by Gold Star. For instance, even though the plaintiff alleges in ¶49 (and again in ¶109) that Mike Rohrkemper "executed the [GSC Opp Operating Agreement] on behalf of Gold Star," and alleges in ¶51 that "Gold Star . . . eventually delegated some of its responsibilities under the [GSC Opp] Operating Agreement to Mason Hill," we know that both of those cannot possibly be true, for at least two reasons: (1) Gold Star was not a member or manager of GSC Opp at all—those roles were filled by GSC EB5 and Mason Hill, not Gold Star, *see id.* at ¶3, and (2) the GSC Opp Operating Agreement confirms that Gold Star is neither a member (*see* doc. 26-4 at PAGEID #518 and 538) nor the manager (*id.* at PAGEID #518).

While the Court must view the pleadings in the light most favorable to Chen, it also is free to consider these contradictions in making its plausibility determination. Internally inconsistent (as opposed to alternative) factual allegations are not entitled to a presumption of truth under the plausibility standard. S*ee, e.g., Montague v. Schofield*, 2016 U.S. Dist. LEXIS 94677, at *7-8 (E.D. Tenn. no. 2:14-CV-292, July 19, 2016). And a

13

factual allegation in a pleading is not entitled to a presumption of truth when a document in the pleadings squarely contradicts it. *See, e.g., Thomas*, 29 Fed. Appx. at 322; *Keenan*, 2006- Ohio-3633, at ¶8-13. The plaintiff's inability to plead with particularity any wrongdoing *by Gold Star* is fatal to his fraud claims. *See In re Keithley*, 268 F.Supp.2d at 906 (dismissing Rule 10b-5 claim where there was "a dearth of detail" in the complaint showing that the corporation was the source of others' false statements), citing *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1126 (W.D. Mich. 1996) (dismissing claim "unless a plaintiff can plead with particularity who among defendants supplied the information, how it was supplied, and how defendants could have controlled the content of the statement.").

When the plaintiff does correctly attribute conduct to Gold Star, it is either conduct that is completely permissible (*see, e.g.,* ¶28 et seq., alleging that Gold Star, with legal counsel, ensured that it was *not* directly a party to any investment vehicles—an absolutely appropriate and entirely ordinary thing for a corporation to do), or conduct for which there is no particularly pleaded explanation for how or why any conduct was fraudulent (much less fraudulent with respect to the plaintiff). As to the latter point, Chen's burden under Rule 9(b) was to allege, at minimum, "1) what the fraudulent statements were, 2) who made them, 3) when and where the statements were made, and 4) why the statements were fraudulent." *Western & Southern Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 899 (S.D. Ohio 2014) (applying particularity

14

standard to Ohio Securities Act claim), quoting *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (CA6 2013). Chen does not meet this standard. He alleges in ¶¶39-41, for example, that "Gold Star initially owned 97% of GSC Opp through GSC EB5," and that "This 97% interest shows [Gold Star[1]]'s control of GSC Opp," because Gold Star previously said that it would have "total control of the project." Even if all of that is true, nothing about it constitutes an adequate pleading of fraud.

And finally, fraud requires pleading (and later proof) of not just misleading statements, but an actual "intent to mislead or deceive." *Western & Southern Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 910 (S.D. Ohio 2014) (applying Ohio law). Even setting aside the other problems with the complaint, there are no factual allegations, much less particularly pleaded factual allegations, showing that Gold Star *intended to deceive* the plaintiff. The picture painted by the complaint shows that Gold Star's involvement was limited to opening restaurants when investor money became available[2]; that Gold Star patiently waited for this specific investor's money to come available, but that never happened; that Gold Star decided not to move forward with any new EB5 locations; and that then someone else (Gary Chan) stole this investor's money a year later. Gold Star wanted investors. It never got them. That is not fraud.

---

[1] Paragraph 40 actually says that the 97% interest "shows GSC's control of GSC Opp," but this is clearly a typo in context.

[2] The plaintiff emphasizes early on in his narrative that an important component of the GSC business plan was to operate restaurants "in conjunction with Gold Star." *See* doc. 110 at ¶70. Gold Star is a restaurant franchisor. It is impossible to operate a Gold Star Chili restaurant except "in conjunction with Gold Star." There is nothing untoward, much less fraudulent, about this.

In short, even if the statute of limitations had not expired, nothing in the second amended complaint plausibly and particularly states a fraud claim against Gold Star.

### c. Chen's investment is not a security anyway.

The third reason that Gold Star is entitled to judgment as a matter of law on the plaintiff's securities fraud claim is that it is not even clear that the plaintiff's investment is a "security." The Supreme Court has said that a "security" exists where "the investor is 'attracted solely by the prospects of a return' on his investment . . . ." *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852 (1975), quoting *SEC v. W. J. Howey Co.*, 328 U.S. 293, 300 (1946). Here, the most plausible reading of the pleadings is that Chen was motivated by the prospect of obtaining a green card, not by any potential investment returns. Because what Chen purchased was not a "security," Gold Star is entitled to judgment as a matter of law on the securities fraud claims.

### 2. The common-law and Ohio-law fraud claims fail for the same reasons as the federal securities-fraud claim, and also because the plaintiff cannot satisfy the elements of his Blue-Sky claim.

The plaintiff's claims in Counts VII (common-law fraud) and XIV (state-law securities fraud) fail for all the same reasons that the federal securities fraud claim fails.

A common-law fraud claim is normally subject to a four-year statute of limitations, but when the alleged fraud "arises from or is predicated upon the sale of securities," then the two-year securities fraud statute of limitations applies; otherwise, form is elevated over substance. *Western & Southern*, 54 F. Supp.3d at 900. The statutory

securities-fraud claims under chapter 1707 are also subject to two-year statutes of limitations, *see* R.C. 1707.43(B), and all the same particularity pleading requirements apply. *Western & Southern* at 899.

In addition, to the extent that the plaintiff raises a claim under R.C. 1707.41(A), *see* doc. 110 at ¶357, there are two more reasons that Gold Star is cannot be liable to the plaintiff as a matter of law. One is that liability exists under that section only for losses incurred "by reason of the falsity of any material statement contained therein or for the omission of material facts" in connection with the sale of a security. Here, the only plausible reading of the complaint is that any loss incurred by Chen was not incurred "by reason of" any inaccuracies in communications made in connection with the sale of any security (all of which occurred in the spring of 2013). Instead, Chen's loss was alleged to have been incurred "by reason of" the fact that Gary Chan committed wire and mail fraud to steal Chen's money out of escrow in 2016. To put it differently, even if the statements in the Business Plan and Partnership Agreement about planning to open twelve restaurants between 2013 and 2014 were materially inaccurate and intended to deceive, and even if those statements were made by Gold Star, those alleged falsities had no bearing on what ultimately happened to the plaintiff's money.[3]

---

[3] Section 1707.43(A) further strips a putative plaintiff of a remedy if "the court determines that the violation did not materially affect the protection contemplated by the violated provision." This is another provision pointing to the same result—providing different information about the restaurants in 2013 would not have prevented Gary Chan from stealing the money in 2016.

The other reason that Gold Star cannot possibly have liability under R.C.

1707.41(A) is that that section only creates liability for either an offeror of a security for

sale, or someone who "receives the profits accruing from such sale." Here, the security

(if indeed it was a security) was in GSC, not Gold Star, and the plaintiff specifically

alleges (and everyone agrees) that Gold Star did *not* receive even a single penny of

Chen's money. *See* doc. 110 at ¶¶147-151; 342.

### C. Gold Star is entitled to judgment as a matter of law on the conspiracy claim.

The eighth and final claim raised against Gold Star is a conspiracy claim in Count

XV. There are several reasons that Gold Star is entitled to judgment as a matter of law.

First, a conspiracy requires an agreement or plan. *Boehnlein-Pratt v. Ventus Corp.*,

Ohio App. 5th Dist., 2015-Ohio-2795, ¶35 (one of the elements of civil conspiracy is a

"malicious combination"); *State v. Perkins*, Ohio App. 8th Dist., 2004-Ohio-4915, ¶48

(calling an agreement "the essence of conspiracy"); 16 Oh Jur. 3d, Conspiracy -- Civil

Aspects, § 2 ("Participation in the conspiracy requires knowledge of the conspiracy and

an act that will knowingly promote the conspiracy.").

There are no facts alleging that Gold Star either made any malicious agreement

with any other party or knowingly promoted any wrongdoing, much less any

conspiracy. By all accounts, Gold Star intended to obtain investors for new franchise

locations, not to cheat Chen out of his money for the benefit of Gary Chan. Planning to

open restaurants is not "malicious," and it is not the same as conspiring to defraud,

18

even if the business venture is not as successful as anyone had hoped. In addition, the complaint alleges that Gold Star announced in August 2015—a full year before the money was stolen—that it was no longer participating with any of the other parties in the EB5 franchise arrangement. *See* doc. 110 at ¶136. Even if there were previously a conspiracy, therefore, the complaint itself establishes that Gold Star withdrew from it, thus extinguishing liability for any future events. The absence of any allegation of a malicious agreement means that Gold Star is entitled to judgment as a matter of law.

Second, a conspiracy claim requires an underlying tort. There is no such thing as a conspiracy to breach a contract. *Strama v. Allstate Ins.*, Ohio App. 7th Dist., 2015-Ohio-2590, ¶37 ("breach of contract cannot serve as the underlying, independent tortious act."). To the extent that Chen has raised a claim for a conspiracy to breach the Partnership Agreement, Gold Star is entitled to judgment as a matter of law because there is no such thing.

Third, the statute of limitations for a conspiracy claim is the statute of limitations applicable to the underlying tort, *see Zhelezny v. Olesh*, Ohio App. 10th Dist., 2013-Ohio-4337, ¶15 n.4, and so there can be no conspiracy claim for any of the substantive claims on which the statute of limitations has expired.

This brief did not previously discuss the conversion claim in Count XI, because it is not raised directly against Gold Star. Gold Star is entitled to judgment as a matter of law on the claim for conspiracy to convert the plaintiff's investment for all the

19

conspiracy-specific reasons described above, but there is a conversion-specific reason, too: under Ohio law, a claim alleging conversion of money (rather than of goods) will only lie if "identification is possible and there is an obligation to deliver the specific money in question." *Dice v. White Family Cos.*, Ohio App. 2d Dist., 2007-Ohio-5755, ¶17. Here, while the plaintiff's investment was identifiable at one point, it has long since lost the point of traceability. There thus can be no conversion, and no conspiracy to convert.

Conspiracy is not a catch-all claim to be pleaded when a plaintiff has no substantive claim against a party. That is what the plaintiff is trying to do here. Gold Star is entitled to judgment as a matter of law.

## IV.    Conclusion

Gold Star is entitled to judgment as a matter of law on all claims in the second amended complaint, and respectfully requests that those claims be dismissed.

Respectfully Submitted,

/s/ Jeffrey M. Nye
Paul T. Saba (0063723)
Jeffrey M. Nye (0082247)
STAGNARO, SABA & PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-6714
(513) 533-2999 – fax
jmn@sspfirm.com
**Attorneys for Defendant Gold Star Chili, Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon all represented parties through the court's CM/ECF system, and on the parties listed below by ordinary mail, on the date of filing.

/s/ *Jeffrey M. Nye*
Jeffrey M. Nye

GSC Opportunities, L.P.
Incorporator: GSC OPP Management, LLC
c/o Corporation Service Company
50 W. Broad Street, Suite 1330
Columbus, Ohio 43215

Gary Chan
899 N. Orange Avenue, Apt. 301
Orlando, Florida 32803

Jardin Hill, LLC
c/o CT Corporation System
306 W. Main Street, Suite 512
Frankfort, KY 40601

Lumen Point Capital Fund I, LLC
c/o Benson Law Firm
1422 Euclid Avenue, Suite 970
Cleveland, Ohio 44115

RG Opportunities I, L.P.
c/o Incorp Services, Inc.
9435 Waterstone Boulevard, Suite 140
Cincinnati, Ohio 45249

GSC OPP Management, LLC
c/o Corporation Service Company
50 W. Broad Street, Suite 1330
Columbus, Ohio 43215

Mason Hill, LLC
c/o Gary Chan
899 N. Orange Avenue, Apt. 301
Orlando, Florida 32803

Clearwater Hospitality Group, LLC
c/o Jacquelyn Chan
918 East Central Boulevard
Orlando, Florida 32801

RG MGMT, LLC
c/o Benson Law Firm
1422 Euclid Avenue, Suite 970
Cleveland, Ohio 44115

GSC EB5 Investor, LLC
c/o Michael S. Barron
3074 Madison Road
Cincinnati, Ohio 4509