UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Baoyang Chen,

    Plaintiff,

v.

GSC Opportunities, L.P., *et al*.,

    Defendants.

Case No. 1:17cv460

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon Defendant Gold Star Chili, Inc.'s Motion to Dismiss Second Amended Complaint. (Doc. 114). Plaintiff filed a Response (Doc. 118) and Defendant filed a Reply (Doc. 124).

### I. BACKGROUND

This case arises out of an EB-5 investment project involving Defendant Gold Star Chili ("Gold Star"), Gary Chan, Terry Chan, and Jacquelyn Chan ("the Chans"), and various entities controlled by the Chans. The project centered on the development of Gold Star Chili restaurants in Ohio, Kentucky, and Indiana. (Doc. 110, ¶ 25).

Plaintiff is a citizen and resident of the People's Republic of China. (Id., ¶ 1). In April 2013, Plaintiff joined GSC Opportunities, L.P. ("GSC"), a limited partnership organized to allow foreign investors to utilize the EB-5 Visa program. (Id.) According to the Second Amended Complaint:

> Under the EB-5 Program, immigrants who invest their capital in job-creating business enterprises in the U.S. receive "conditional" permanent resident status in the U.S. for two (2) years after their I-526 application is approved. If, after the two-year period, the immigrants satisfy the EB-5 Program conditions and other Program criteria, USCIS removes the conditions and

> the immigrant investors become lawful permanent residents. In other words, the immigrant investors obtain their "Green Cards."

(Id., ¶ 21). Plaintiff claims that Gold Star, Terry Chan, Gary Chan, and Mason Hill, LLC used the EB-5 Program to lure Plaintiff into investing over $500,000 in GSC. (Id., ¶ 24). Plaintiff explains his $500,000 investment was deposited into an escrow account, but he did not know at that time that the documents he received related to the project were false, and that GSC would contain less investors, have less funding, and would be smaller than represented to him. (Id., ¶¶ 108-124, ¶ 161). Plaintiff claims that due to Gold Star's lack of oversight, in August 2016, Gary Chan used the access Gold Star had provided to him to steal all of Plaintiff's investment. (Id. at ¶¶ 158-163)

Plaintiff brings eight claims against Gold Star: federal securities law violations (Count VI), fraud (Count VII), breach of contract (Count VIII), breach of fiduciary duty (Count IX), gross negligence (Count X), breach of Ohio Revised Code § 1782.242 and rescission (Count XII), Ohio securities law violations (Count XIV), and conspiracy (XV).

Gold Star moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims raised against it in the Second Amended Complaint. Gold Star claims that it did not owe any contractual or fiduciary duties to Plaintiff; and the claim for securities fraud is barred by the statute of limitations. Gold Star maintains that the other claims against it are not based on Gold Star's conduct.

Plaintiff responds that Gold Star's argument that it was not a partner of Plaintiff should be rejected based on Plaintiff's piercing the corporate veil allegations. Plaintiff also argues that as a parent company, Gold Star can be held directly liable for the conduct of a subsidiary. As to the statute of limitations, Plaintiff maintains that the discovery rule applies and the statute of limitations did not begin to run until Plaintiff discovered the

fraud.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Federal Rule of Civil Procedure 8 provides that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

### B. Federal securities law violations (Count VI)

In the Second Amended Complaint, Plaintiff alleges that Gold Star "provided Plaintiff, or caused Plaintiff to be provided, with promotional materials, a Business Plan, and a Partnership Agreement that contained a number of material misrepresentations or omissions about GSC." (Doc. 110, ¶ 288). Plaintiff claims that providing these materials

3

was in violation of 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Plaintiff states that these materials were provided to him before April of 2012, when he signed the Partnership Agreement which formed GSC. (Doc. 110, ¶ 106).

The parties agree that the statute of limitations for these claims is two years. *See* 28 U.S.C. § 1658(b)(1). The Supreme Court has explained that the two-year time limit "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed]' the facts constituting the violation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010). In this context, "'discovery' of a § 10(b) claim means, in addition to actual discovery, the point at which 'a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' not when a reasonable 'plaintiff would have *begun* investigating.'" *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 547 (6th Cir. 2012) (quoting *Merck*, 559 U.S. 651) (emphasis in original). Gold Star argues that the statute of limitations began to run when Plaintiff received the promotional materials in April of 2012, but in the alternative, Plaintiff was on notice of the facts constituting the violation when a number of benchmarks for the project were not reached by July of 2014. Gold Star states at the very latest, Plaintiff should have been on notice in October of 2014 when Plaintiff did not receive his immigration visa as promised. Therefore, according to Gold Star, Plaintiff's Amended Complaint—which added Gold Star as a party and was filed in November of 2017—was filed beyond the two-year statute of limitations.

"Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted 'when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief.'" *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th

4

Cir. 2003), *holding modified by Merck & Co. v. Reynolds*, 559 U.S. 633, 130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010) (quoting *Ott v. Midland–Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir.1975)). Here, Plaintiff has alleged that Gold Star and the Chans kept the fraud hidden, and Plaintiff received false budgets and project updates as late as August 31, 2017. (Doc. 110, ¶ 215). Clearly, Plaintiff discovered the facts constituting the violation before the August 2017 date—a date after Plaintiff filed the original complaint in this matter. Plaintiff also must have known something was amiss by March 10, 2016, when Plaintiff, through his immigration counsel, sent an email to Gary and Terry Chan asking for an audited financial report and an update regarding GSC. (Doc. 110, ¶ 179). However, the question is at what point should Plaintiff have discovered the facts constituting the violation, and was this date before November of 2015? While Gold Star gave notice that it was terminating its involvement in the EB-5 investment project in August of 2015 (Doc. 110, ¶ 137), Plaintiff alleges that he did not receive this notice (Doc. 110, ¶ 139). Therefore, Gold Star may have known that there were problems with the project by August of 2015, but there is nothing in the Second Amended Complaint showing that before November of 2015 there was "evidence of the *possibility* of fraud" which would have triggered inquiry notice. *In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 863 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017) (emphasis in original). "[O]n a motion to dismiss, a claim is barred by the statute of limitations based on inquiry notice 'only when uncontroverted evidence irrefutably demonstrates when plaintiff discovered or should have discovered' the violation." *Id.* (quoting *Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 194-95 (2d Cir. 2003)). The delays in the EB-5 investment project, both in completing construction of

restaurants and the processing of Plaintiff's immigration application, do not irrefutably demonstrate Plaintiff should have discovered the violation. As Plaintiff points out, construction projects notoriously take longer than projected, and the processing times for an I-526 form by the U.S. Citizenship and Immigration Services average a little over 18 months. (Doc. 118, PageID 1766). Therefore, these delays could have been the result of something other than fraud. *Accord In re EveryWare Glob.*, 175 F.Supp.3d at 863 ("although Plaintiffs knew that EveryWare had adjusted its financial projections downward on October 30, 2013, and that its stock price had begun to drop precipitously, there are many reasons why a company might underperform, or its stock price drop, that have nothing to do with fraud"). In short, there is nothing in the Second Amended Complaint which triggered the duty to investigate before July of 2015; and Plaintiff's claim of federal securities law violations is not barred by the statute of limitations.

Gold Star argues that even if Plaintiff's claim is not barred by the statute of limitations, Plaintiff does not allege with particularity any fraudulent conduct by Gold Star, and instead has alleged fraud which is attributable to other parties.

The failure to plead securities fraud with particularity constitutes failure to state a claim. *Benoay v. Decker*, 517 F.Supp. 490, 492-94 (E.D.Mich. 1981), *aff'd*, 735 F.2d 1363 (6th Cir.1984). However, Plaintiff points to his allegations that Gold Star, through its officers, created, reviewed, edited, and approved key documents which were a part of the EB-5 investment project. (Doc. 110. at ¶ 36, 73, 81). Plaintiff alleges that false representations were made in these documents regarding the number of restaurants to be constructed, the number of investors in GSC, Gold Star's financial contribution to GSC, and GSC's overall funding; and Gold Star knew these representations were false because

6

soon after Plaintiff signed the Partnership Agreement which formed GSC, Gold Star made modifications to the documents which altered GSC's size, scope, and financing. (Doc. 110, ¶¶ 108-124). Plaintiff alleges that these misrepresentations induced him to invest in GSC. (Doc. 110, ¶ 291). The Court finds that these allegations are sufficient to support Plaintiff's claim against Gold Star at this stage of the proceedings.

Finally, Gold Star argues that Plaintiff cannot maintain a securities fraud claim because it is not clear that Plaintiff's investment is a "security." However, as Plaintiff points out, limited partnership interests and EB-5 investments have been found to be securities subject to federal securities laws. *See*, *e.g.*, *Martin v. Steubner*, 485 F. Supp. 88, 89 (S.D. Ohio 1979), *aff'd*, 652 F.2d 652 (6th Cir. 1981) (securities fraud case arising out of purchase of an interest in limited partnership formed for the purpose of developing an ice-skating arena); *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1941, 207 L. Ed. 2d 401 (2020) ("Investments in EB–5 projects are subject to the federal securities laws.").

Therefore, to the extent it seeks to dismiss Plaintiff's claim for federal securities law violations (Count VI), Gold Star's Motion to Dismiss is DENIED.

C. **Fraud (Count VII)**

Gold Star argues that Plaintiff's claim for fraud must be dismissed for the same reasons Plaintiff's claim for federal securities law violations should be dismissed. However, because the Court has rejected those reasons for the dismissal of the claim for federal securities law violations, those reasons are not a basis for dismissing Plaintiff's fraud claim.

Therefore, to the extent it seeks to dismiss Plaintiff's claim for fraud (Count VII), Gold Star's Motion to Dismiss is DENIED.

### D. <u>Breach of contract (Count VIII)</u>

In Ohio, "[t]o establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (citing *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 104 N.E.3d 1076, ¶ 28 (Ohio Ct. App. 2018)).

Plaintiff's breach of contract claim is based on the Partnership Agreement under which GSC was formed. Gold Star argues that there is no allegation that Gold Star ever signed the Partnership Agreement, or that Gold Star ever became a party to the Partnership Agreement through an assignment. Plaintiff responds that the Second Amended Complaint adequately plead that the entities which did sign the Partnership Agreement were controlled by Gold Star such that the corporate veil of those entities should be pierced and Gold Star cannot avoid liability.

In Ohio, three elements must be present to pierce the corporate veil: "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud, an illegal act, or a similarly unlawful act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Gold Crest, LLC v. Project Light, LLC*, No. 5:19-CV-2921, 2021 WL 918281, at *13 (N.D. Ohio Mar. 10, 2021) (citing *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Co., Inc.*, 67 Ohio St.3d 274, 617 N.E.2d 1075, 1086 (1993); *Dombroski v. Wellpoint, Inc.*, 119 Ohio St.3d 506, 895 N.E.2d 538, 539 (2008)). Gold Star argues that Plaintiff has not included a claim for piercing the corporate veil in the Second Amended

Complaint. However, this Court has held that piercing the corporate veil is not a cause of action itself. *Allied Diversified Constr., Inc. v. Elite Mech., Inc.*, No. 1:16cv334, 2016 WL 7034238, at *3 (S.D. Ohio Dec. 2, 2016) (citing *Orrand v. Kin Contractors, LLC*, No. 2:09cv1129, 2011 WL 1238301, at *4 (S.D. Ohio Mar. 30, 2011)). Instead, piercing the corporate veil "is a means of imposing liability on a defendant; therefore, each basis for piercing the corporate veil is an independent ground of recovery that must be specifically pleaded." *Id*. In addition, this Court has held that: "In general, 'the question of whether [a shareholder] exercised a degree of control over [a corporation] justifying [a] Court's holding it accountable ... is a fact-sensitive question which ... should not be answered until the Plaintiff[ ] ha[s] had some opportunity to conduct discovery on this matter.'" *Cap City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2016 WL 4573993, at *12 (S.D. Ohio Sept. 1, 2016) (quoting *Orrand*, 2011 WL 1238301, at *4).

The Court concludes that Plaintiff has alleged sufficient facts in the Second Amended Complaint to justify piercing the corporate veil. Plaintiff alleges that GSC was the "brainchild" of Gold Star, Gold Star's board, Gold Star's Chief Executive Officer, Mike Rohrkemper, and Mike Mason, Gold Star's Vice President of Operations and Franchise Development. (Doc. 110, ¶ 26). Plaintiff explains that the details of the project were memorialized in a Memorandum of Understanding between Gold Star and Mason Hill, LLC, which is an entity controlled by the Chans. (Doc. 110, ¶ 32). The Memorandum stated that Gold Star, or its wholly owned subsidiary, and Mason Hill would form a limited liability company to be the General Partner of GSC; and Gold Star agreed to contribute $3 million to GSC. (Doc. 110, ¶¶ 33-34). Plaintiff alleges that after the Memorandum was signed, Gold Star, Rohrkemper, Mason, and the Chans continued working together to

9

finalize GSC's organizational structure. (Doc. 110, ¶ 36). Plaintiff explains that as part of that structure, Gold Star, Rohrkemper, Mason, and the Chans created an entity known as "GSC OPP" to serve as the general partner for GSC. (Doc. 110, ¶ 38). Plaintiff claims that even though Gold Star owned 97% of GSC OPP through a third entity—GSC EB5 Investor, LLC ("GSC EB5")—this entity was Gold Star's wholly-owned subsidiary and in practice, Gold Star controlled both GSC OPP and GSC EB5 during the key time periods (Doc. 110, ¶ 39-40). For instance, Plaintiff alleges that Rohrkemper served as GSC OPP's president and registered agent, and Mason served as GSC OPP's Vice President. (Doc. 110, ¶ 47). Plaintiff claims that Gold Star exercised its control it had over GSC and GSC OPP to create, review, edit and approve the key documents for the EB-5 investment project, including the Partnership Agreement, which was signed by Plaintiff. (Doc. 110, ¶¶ 58, 68, 81, 106). Plaintiff claims that he entered into the Partnership Agreement based on the terms of the Partnership Agreement itself, as well as documents such as GSC's business plan, promotional booklet, and private placement memorandum. (Doc. 110, ¶¶ 103, 302). Plaintiff states that these documents, which were prepared by Gold Star, contained false information, including the representation that GSC would be financed with a $3 million investment from Gold Star. (Doc. 110, ¶¶ 68, 72, 107). The Court concludes that these allegations meet the minimum requirement necessary at this stage of the proceedings to establish the elements of piercing the corporate veil under Ohio law.

Therefore, to the extent it seeks to dismiss Plaintiff's claim for breach of contract (Count VIII), Gold Star's Motion to Dismiss is DENIED.

### E. Breach of fiduciary duty (Count IX)

Plaintiff claims that Gold Star breached its fiduciary duty to Plaintiff by, "among

other things, converting GSC Limited Partner funds, failing to ensure that GSC carried out the purposes defined in the Partnership Agreement, failing to provide Plaintiff with accurate information about GSC, failing to correct misrepresentations made to GSC Limited Partners, failing to protect Plaintiff's or GSC's funds, failing to ensure that GSC OPP satisfied its duties as GSC's General Partner, causing GSC OPP to breach the GSC OPP Operating Agreement and GSC's Agreement of Limited Partnership, and failing to liquidate GSC upon the occurrence of a liquidating event." (Doc. 110, ¶ 326).

Gold Star argues that under Ohio Revised Code § 2305.09, the statute of limitations for a breach of fiduciary duty claim is four years, and therefore, any conduct that occurred before November 22, 2013 cannot form the basis for a breach of fiduciary duty claim.

However, as this Court has acknowledged, the Supreme Court of Ohio has extended the discovery rule to claims for breach of fiduciary duty that are "based on fraud." *Father Flanagan's Boys Home v. Donlon*, 449 F. Supp. 3d 739, 744 (S.D. Ohio 2020) (citing *Cundall v. U.S. Bank*, 122 Ohio St. 3d 188, 193 (Ohio 2009)). Here, Plaintiffs alleges Gold Star prepared and disseminated of false materials and misleading communications, and Plaintiff relied on these statements. Based on these allegations, the Court finds that the discovery rule is applicable to Plaintiff's breach of fiduciary duty claim; and accordingly, to the extent that Plaintiffs' breach of fiduciary duty is based on conduct occurring before November 22, 2013, it is not time-barred.

Gold Star also argues it did not owe any fiduciary duties to Plaintiff because Gold Star was not the General Partner of GSC; and instead, the Partnership Agreement states that GSC OPP is the General Partner that promised to invest. However, as the Court has

explained above, Plaintiff has sufficiently plead facts which would support Plaintiff's contention that piercing the corporate veil is appropriate in this case.

Therefore, to the extent it seeks to dismiss Plaintiff's claim for breach of fiduciary duty (Count IX), Gold Star's Motion to Dismiss is DENIED.

### F. Gross negligence (Count X)

Plaintiff's claim for gross negligence is based on the duty of care general partners owe to a limited partnership under Ohio law. *See* Ohio Rev. Code § 1782.241 ("A general partner shall perform the duties of a general partner in good faith, in a manner the general partner reasonably believes to be in or not opposed to the best interests of the limited partnership, and with the care that an ordinarily prudent person in a like position would use under similar circumstances." Gold Star argues that this claim must be dismissed because Gold Star never entered into a partnership with Plaintiff. However, as this Court has explained above, Plaintiff has alleged grounds to support piercing the corporate veil, which if proven, would subject Gold Star to liability.

Therefore, to the extent it seeks to dismiss Plaintiff's claim for gross negligence (Count X), Gold Star's Motion to Dismiss is DENIED.

### G. Ohio Revised Code § 1782.242 (Count XII)

Plaintiff claims that he is entitled to the recission of his investment in GSC under Ohio Revised Code § 1782.242 due to self-dealing and other inappropriate conduct on the part of Gold Star. Gold Star argues that Gold Star was not and is not a partner of the plaintiff, so Ohio Revised Code § 1782.242 does not apply to Gold Star. Gold Star also argues that if Plaintiff seeks to rescind the Partnership Agreement, he needs to seek relief from the other parties to that contract, and Gold Star is not one of them. However, the as

explained above, the Second Amended Complaint sets forth sufficient facts to make it plausible that Plaintiff could prove a basis to pierce the corporate veil of the parties to the Partnership Agreement and hold Gold Star liable.

Therefore, to the extent it seeks to dismiss Plaintiff's claim under Ohio Revised Code § 1782.242 (Count XII), Gold Star's Motion to Dismiss is DENIED.

H. **Ohio securities law violations (Count XIV)**

Plaintiff claims that Gold Star violated various sections of Ohio law which govern the sale of securities, including Ohio Revised Code § 1707.41(a). which states:

> In addition to the other liabilities imposed by law, any person that, by a written or printed circular, prospectus, or advertisement, offers any security for sale, or receives the profits accruing from such sale, is liable, to any person that purchased the security relying on the circular, prospectus, or advertisement, for the loss or damage sustained by the relying person by reason of the falsity of any material statement contained therein or for the omission of material facts, unless the offeror or person that receives the profits establishes that the offeror or person had no knowledge of the publication prior to the transaction complained of, or had just and reasonable grounds to believe the statement to be true or the omitted facts to be not material.

Ohio Rev. Code § 1707.41(A).

Gold Star argues that it cannot be held liable for any violations of Ohio's securities law because Plaintiff's loss was not incurred as the result of a false statement made in connection with the sale of a security, but was instead caused by Gary Chan stealing Plaintiff's money. However, as this Court has explained, "[c]ourts interpreting Ohio securities law have often looked to parallel provisions of federal law." *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 905 F. Supp. 2d 814, 828 (S.D. Ohio 2012), *aff'd sub nom. Pharos Cap. Partners, L.P. v. Deloitte & Touche*, 535 F. App'x 522 (6th Cir. 2013). Therefore, the Court's analysis with regard to reliance is the same as Plaintiff's federal

13

securities law claim; and Plaintiff's allegation that he would not have invested in GSC but for Gold Star's fraud satisfies Plaintiff's pleading burden. In addition, as this Court has explained with regard to the remedy of recission:

> Ohio Revised Code § 1707.43(A) states that the remedy for a violation of Chapter 1707 is "the full amount paid by the purchaser," and that remedy is not conditioned by proof of independent damages beyond the illegality of the transaction caused by the defendant's violation of the statute. *See also Crater v. Int'l Res., Inc.*, 92 Ohio App.3d 18, 633 N.E.2d 1212, 1216 (1993) (explaining that § 1707.43 "is designed to redress the defendant's unlawful securities transactions by restoring 'the full amount paid by [the] purchaser,' regardless of the ultimate success or failure of the investment").

*Stuckey v. Online Res. Corp.*, 909 F. Supp. 2d 912, 940 (S.D. Ohio 2012).

Gold Star also contends that it was not required to comply with any of the requirements of Ohio's securities law because it did not offer any securities for sale. However, Plaintiff points out that general partners can be liable under Ohio Revised Code § 1707.41 when they offer securities themselves, or when they act as the general partner of a partnership making the offer. *See Baker v. Conlan*, 66 Ohio App. 3d 454, 461, 585 N.E.2d 543, 547 (Ohio Ct. App. 1990). Once again, Plaintiff will need to prove that Gold Star actually acted as GSC's general partner, but at this stage of the litigation, Plaintiff has adequately plead a theory of liability that the corporate veil should be pierced.

Therefore, to the extent it seeks to dismiss Plaintiff's claim for violations of Ohio securities law (Count XIV), Gold Star's Motion to Dismiss is DENIED.

I. **Conspiracy (Count XV)**

To establish a claim of civil conspiracy under Ohio law, a plaintiff must prove: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 538 (6th Cir. 2000) (citing *Universal Coach,*

*Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 629 N.E.2d 28, 33 (Ohio 1993)). Here, Plaintiff claims that Gold Star conspired with the Chans to commit fraud, securities fraud, breach fiduciary duties, and convert Plaintiff's funds.

Gold Star maintains that Plaintiff's conspiracy claim is barred by the statute of limitations because the statute of limitations for a conspiracy claim is the statute of limitations applicable to the underlying tort. However, because the Court has determined that the statute of limitations for the underlying tort claims have not run, the Court concludes that statute of limitations for the conspiracy claim has also not run.

Gold Star also argues that there was no agreement or plan between Gold Star and the Chans. However, in order to prove a "malicious combination," a plaintiff need not show express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *Aetna Cas. & Sur. Co.*, 219 F.3d at 538 (quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 687 N.E.2d 481, 496 (Ohio 1996)). Here, Plaintiff alleges that Gold Star worked together with the Chans to prepare, edit and approved the materials containing materially false information. (Doc. 110, ¶¶ 36-37). These allegations are sufficient to support this element of a claim for conspiracy.

Therefore, to the extent it seeks to dismiss Plaintiff's claim for conspiracy (Count XV), Gold Star's Motion to Dismiss is DENIED.

### III. <u>CONCLUSION</u>

Based on the foregoing, Defendant Gold Star Chili, Inc.'s Motion to Dismiss Second Amended Complaint (Doc. 114) is **DENIED**.

**IT IS SO ORDERED.**

                                            */s/ Michael R. Barrett*
                                        JUDGE MICHAEL R. BARRETT